[Civ. No. 30986. First Dist., Div. Three. Mar. 8, 1973.]

JANICE JANSEN, Plaintiff and Appellant, v.
CHILDREN'S HOSPITAL MEDICAL CENTER OF THE EAST BAY,
Defendant and Respondent.

## COUNSEL

Sangster & Hardy and John Hardy for Plaintiff and Appellant.

Rankin, Sproat, Archer & Rankin and Ronald G. Sproat for Defendant and Respondent.

## OPINION

DRAPER, P. J.—Plaintiff mother, as special administratrix, sought damages for the wrongful death of her 5-year-old daughter, allegedly resulting from the malpractice of respondent hospital. She added a count for emotional trauma and allegedly resulting physical injury, caused to the mother individually by witnessing the progressive decline and ultimate death of her daughter in the hospital. The hospital demurred to the count seeking damages for the mother's injury. The demurrer was sustained without leave to amend, the count was dismissed, and plaintiff appeals. This appeal concerns only the individual rights of the mother for her own alleged injuries.

The complaint alleges that: the daughter, suffering from some unspecified ailment, was admitted to the hospital at a date not specified; defendant agreed to "diagnose and treat" the daughter; it "negligently discharged those obligations" and as a proximate result the child died in the hospital. It is also alleged that the mother accompanied her child to the hospital, "stayed with her for extended periods of time during her hospitalization"; "witnessed [her] last hours and her death"; the child "died painfully . . . from what was subsequently diagnosed as a massive gastro-intestinal hemorrhage due to a penetrating duodenal ulcer."

The issue is the application of a 1968 decision (*Dillon* v. *Legg*, 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912]). *Dillon* for the first

time in this state established the rule that a mother who "was in close proximity" and was an eyewitness to the striking of her child by an automobile could recover for physical injury resulting from emotional shock caused to her, even though the mother was not herself in the "zone of danger." Our question is whether the rule of *Dillon* extends to this situation, in which there was no impact, but either a failure to diagnose or an erroneous diagnosis of a preexisting condition.

*Dillon,* recognizing the need to "limit the otherwise potentially infinite liability which would follow every negligent act,'" sets up three guidelines for determining foreseeability of injury to another than the person actually struck. The first two of these are "whether plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it," and whether the shock "resulted from . . . the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence."

This language contemplates a sudden and brief event causing the child's injury. More important to the facts before us, however, the two quoted conditions emphasize the need that the event causing injury to the child must itself be one which can be the subject of sensory perception. Appellant seeks the construction that visibility of the result, as distinguished from that of the tortious act itself, is the essential element.

This view, however, could well approach the "potentially infinite liability" which *Dillon* purports to avoid. Failure of diagnosis, of course, is not an event which can itself be perceived by the layman. In fact, it occurs only when the expert, however negligently, fails of perception. We by no means minimize the often agonizing effects upon a survivor of the slow decline and death of a loved one. But to extend the rule of·*Dillon* to the entire area of injury to a parent by improper diagnosis of a child's ailment (and, perhaps as logically, to the emotional impact upon a spouse and children of an ill parent) is an extreme broadening of the rule which the Supreme Court apparently sought to limit.

In the few decisions since *Dillon,* we find nothing to warrant the broad extension of the rule here sought. In one (*Archibald* v. *Braverman,* 275 Cal.App.2d 253 [79 Cal.Rptr. 723] [hg. den.]), a son was seriously injured by an explosion of gunpowder. His mother did not witness the explosion, but within moments she rushed to her son and saw his bleeding and badly battered body. She was allowed recovery. There it can be inferred that the mother heard the explosion, thus having a "sensory observance of it." In any event, it is clear that even a lay person, viewing the gory result, necessarily reconstructed mentally the precise brief

event itself, and in *Archibald,* did so substantially contemporaneously with that event. In another (*DeBoe* v. *Horn,* 16 Cal.App.3d 221 [94 Cal.Rptr. 77] [hg. den.]), plaintiff's husband was seriously injured in an automobile accident which plaintiff wife did not observe. She was, however, called to the emergency room of the hospital in which he was treated, and there learned that he was totally paralyzed. The court held that demurrer was properly sustained. The only Supreme Court decision (*Capelouto* v. *Kaiser Foundation Hospitals,* 7 Cal.3d 889 [103 Cal.Rptr. 856, 500 P.2d 880]) but tangentially refers to the parent's right to recover and, in any event, is based upon hospital negligence which directly caused the child to contract an infection.

In embarking upon this new area of tort law, *Dillon* itself counsels moderation. To extend the broadening process to the whole field of medical malpractice in diagnosis appears to us an unwarranted and impractical expansion. In any case, this very broad departure is hardly appropriate to an intermediate appellate court. We heed *Dillon's* counsel of caution.

Judgment affirmed.

Brown (H. C.), J., and Caldecott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 3, 1973.