197 N.J. Super. 385 (1984)
484 A.2d 1316
WILLIAM LINDENMUTH AND KAREN LINDENMUTH, INDIVIDUALLY AND AS ADMINISTRATORS AD PROSEQUENDUM OF THE ESTATE OF ROBERT WILLIAM LINDENMUTH, DECEASED, PLAINTIFFS,
v.
MARTIN ALPERIN, M.D., THOMAS E. BAUMLIN, JR., M.D., RIVERVIEW HOSPITAL ASSOCIATION, JOHN DOE, M.D. (A FICTITIOUS NAME), DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided June 25, 1984.
*386 Thomas J. Demarest for plaintiffs.
Steven F. Nemeth for defendant Alperin (Orlovsky, Grasso & Orlovsky, attorneys).
Joel A. Greenberg for defendant Baumlin (Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys).
Anthony Luongo for defendant Riverview Hospital Association (Luongo & Catlett, attorneys).
THOMAS, J.S.C.
In this medical malpractice case, defendants seek summary judgment dismissal of plaintiffs' claim for emotional damages. On September 9, 1981, plaintiff Karen Lindenmuth was admitted to the hospital and delivered a son who died three days later from an intestinal obstruction. Defendants are alleged to be negligent because of their failure to diagnose and thereafter treat this obstruction. The critical question is whether misdiagnosis was an event observed by the plaintiffs, thus qualifying their emotional damage claim pursuant to the requirements of Portee v. Jaffee, 84 N.J. 88 (Sup.Ct. 1980). It is concluded that misdiagnosis does not so qualify and accordingly, this emotional damage claim must be dismissed.
In Portee our Supreme Court addressed the issue of recovery for the negligent infliction of emotional distress and followed the lead of California expressed in Dillon v. Legg, 68 Cal.2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (Sup.Ct. 1968). Portee v. Jaffee, supra, 84 N.J. at 97-100. In so holding, requirements for discovery established in Dillon were adopted by our Supreme Court:
The cause of action we approve today for the negligent infliction of emotional distress requires proof of the following elements: (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or *387 intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress. [84 N.J. at 101]
Application of the third factor  observation of the injury  is crucial to plaintiffs' claim. In discussing this requisite for recovery, the New Jersey Supreme Court stated:
Discovering the death or serious injury of an intimate family member will always be expected to threaten one's emotional welfare. Ordinarily, however, only a witness at the scene of the accident causing death or serious injury will suffer a traumatic sense of loss that may destroy his sense of security and cause severe emotional distress. As Justice Cardozo stated in his classic formulation, "The risk reasonably to be perceived defines the duty to be obeyed." Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928); See F. Harper & F. James, supra, § 18.2 at 1018. Such a risk of severe emotional distress is present when the plaintiff observes the accident at the scene. Without such perception, the threat of emotional injury is lessened and the justification for liability is fatally weakened.
....
The proximity of the plaintiff to the accident scene increases the liklihood that he will witness the event causing the death or serious injury of a loved one. Yet it appears that if the plaintiff must observe the accident that causes death or serious injury, a requirement of proximity is necessarily satisfied. The risk of emotional injury exists by virtue of the plaintiff's perception of the accident, not his proximity to it. [Id. 84 N.J. at 99-100; emphasis supplied]
Thus, the issue here is whether misdiagnosis is something which can be equated with observing the injury. California cases subsequent to Dillon v. Legg, supra, have discussed the issue, New Jersey has not. California has ruled that a party cannot recover emotional damages for a doctor's negligent diagnosis and treatment of a close family member. In Jansen v. Children's Hospital Ctr. of East Bay, 31 Cal. App.3d 22, 106 Cal. Rptr. 883 (Ct. of App. 1973), plaintiff mother sued a hospital for emotional trauma caused by her "witnessing the progressive decline and ultimate death of her daughter." 31 Cal. App.3d at 23, 106 Cal. Rptr. at 884. Specifically, she alleged that the hospital's servants failed to properly diagnose a gastro-intestinal hemorrhage in her daughter and that this negligence caused her daughter's slow and painful death. The mother, who was constantly at her daughter's side, alleged that observing *388 her daughter's condition caused her severe emotional distress. In denying recovery for this claim, the court noted that in misdiagnosis cases, two Dillon factors  proximity to the accident and witnessing the accident, are not met:

Dillon, recognizing the need to "limit the otherwise potentially infinite liability which would follow every negligent act," sets up three guidelines for determining foreseeability of injury to another than the person actually struck. The first two of these are "whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it," and whether the shock "resulted from ... the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence."
This language contemplates a sudden and brief event causing the child's injury. More important to the facts before us, however, the two quoted conditions emphasize the need that the event causing injury to the child must itself be one which can be the subject of sensory perception. Appellant seeks the construction that visibility of the result, as distinguished from that of the tortious act itself, is the essential element.
This view, however, could well approach the "potentially infinite liability," which Dillon purports to avoid. Failure of diagnosis, of course, is not an event which can itself be perceived by the layman. In fact, it occurs only when the expert, however negligently, fails of perception. We by no means minimize the often agonizing effects upon a survivor of the slow decline and death of a loved one. But to extend the rule of Dillon to the entire area of injury to a parent by improper diagnosis of a child's ailment (and, perhaps as logically, to the emotional impact upon a spouse and children of an ill parent) is an extreme broadening of the rule which the Supreme Court apparently sought to limit. [31 Cal. App.3d at 24, 106 Cal. Rptr. at 884-885; emphasis supplied]
The California Supreme Court in Justus v. Atchison, 19 Cal. 3d 564, 565 P.2d 122, 139 Cal. Rptr. 97 (Sup.Ct. 1977) also denied recovery to a father for emotional trauma in a similar setting. There, the father was in the operating room observing the birth of his child. Due to the alleged negligence of the doctor, there was a stillbirth for which the father sought recovery for his emotional damages. The California Supreme Court rejected this claim because the Dillon requirement of shock as the result of a "`direct emotional impact' on the plaintiff caused by `sensory and contemporaneous observance of the accident'" had not been met. 19 Cal.3d at 584, 565 P.2d at 135, 139 Cal. Rptr. at 110. Specifically, they observed:

*389 Here, although each plaintiff was in attendance at the death of the fetus, that event was by its very nature hidden from his contemporaneous perception: he could not see the injury to the victim as in Mobaldi [v. Board of Regents (1976) 55 Cal. App.3d 573, 127 Cal. Rptr. 720], nor could he otherwise sense it as in Archibald [v. Braverman (1969) 275 Cal. App.2d 253, 79 Cal. Rptr. 723] or Krouse [v. Graham (1977) 19 Cal.3d 59, 137 Cal. Rptr. 863, 562 P.2d 1022]. To put it another way, he had been admitted to the theater but the drama was being played on a different stage.
Viewed realistically, therefore, each complaint paints the following picture: the plaintiff husband witnessed certain disturbing developments in the delivery room, including expressions of concern by the medical staff and use of emergency procedures. Whether the described events constitute negligence is questionable, but they no doubt induced a growing sense of anxiety on the plaintiff's part. Yet his anxiety did not ripen into the disabling shock which resulted from the death of the fetus until he was actually informed of that event by the doctor; prior to that moment, as a passive spectator he had no way of knowing that the fetus had died. In short, the impact derived not from what he saw and heard during the attempted delivery, but from what he was told after the fact. As we have seen, however, a shock caused by "learning of the accident from others after its occurrence," (68 Cal.2d at p. 741, 69 Cal. Rptr. at p. 80, 441 P.2d at p. 920) will not support a cause of action under Dillon. (citations omitted). [19 Cal.3d at 584-585, 565 P.2d at 135-136, 139 Cal. Rptr. at 110-111]
The instant case presents a factual setting similar to these two California decisions. Here failure to diagnose and treat an intestinal blockage was not "[an] event causing injury ... which can be the subject of sensory perception." Jansen v. Children's Hospital Medical Center of East Bay, supra, 31 Cal. App.3d at 24, 106 Cal. Rptr. at 885. Plaintiff's emotional distress arose from observing the result rather than an act. The critical element, sensory perception of a shocking event, was not present. Plaintiff, therefore, does not meet this Portee qualification necessary to recover for any emotional loss.
Plaintiff nevertheless argues that notwithstanding the California decisions, this case factually calls for an extension of the Portee rule. Our Appellate Court recently was asked to stretch the Portee requirements for recovery and refused to do so. See Eyrich v. Dam, 193 N.J. Super. 244, 259 (App.Div. 1984) ("... extension of the Portee doctrine should come not from us but from the Supreme Court.")
*390 Defendant's motion to dismiss the emotional damage claim is granted.