207 N.J. Super. 579 (1985)
504 A.2d 813
RAMADES ACEVEDO, PLAINTIFF,
v.
COUNTY OF ESSEX, DR. THOMAS SANTORO AND DR. PABLO ROY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided August 21, 1985.
*582 Ellen Radin for plaintiff (Ulloa & Espinosa, attorneys).
Michael H. Glassman, for defendants (David H. Ben-Asher, Essex County Counsel, attorney).
VILLANUEVA, J.S.C.
This is a motion for summary judgment brought by defendants to dismiss plaintiff's complaint which seeks damages for *583 negligent infliction of emotional distress, caused because of plaintiff's alleged observance of his son's body which was exhumed four months after the Essex County Medical Examiner had determined the cause of death to be pneumonitis, when it was later discovered to be murder caused by four bullets in the head.
The issues involved are: (1) must plaintiff satisfy the four elements necessary to establish a case for negligent infliction of emotional distress; (2) must plaintiff's claim for recovery for pain and suffering be dismissed for failure to meet the $1,000 threshold of N.J.S.A. 59:9-2(d); and (3) are defendants immune from this suit by virtue of the Tort Claims Act, N.J.S.A. 59:3-10 and:2-2(b).
The court holds that plaintiff cannot establish the necessary elements to establish a case for negligent infliction of emotional distress and has not satisfied the threshold requirements of the Tort Claims Act. In addition, defendants have immunity. Accordingly, defendants' motion for summary judgment is granted.
The undisputed facts are that plaintiff's son, Thomas Acevedo, was found dead in his bed on January 30, 1982. His body was taken to be examined by the Essex County Medical Examiner. The examination report stated that the cause of death was pneumonitis. Others who had observed the body told plaintiff that there were bullet wounds in the head. Four months after the burial the body was exhumed at the request of the prosecutor, and it was re-examined. It was then determined that Thomas had been murdered because there were four bullets lodged in his head.
Plaintiff filed suit against the County of Essex, Dr. Thomas Santoro, its Medical Examiner and Dr. Pablo Roy, its Assistant Medical Examiner, alleging that he suffered great anguish and emotional distress as a result of the incorrect autopsy report and subsequent exhumation of his son's body. There is no *584 competent evidence where, when or if plaintiff observed his son's body.
Defendants move to dismiss plaintiff's complaint on four grounds:
(1) failure to establish all four elements of a claim for emotional distress;
(2) failure to meet the $1,000 threshold requirement of N.J.S.A. 59:9-2(d);
(3) the individual defendants are immune from liability for any misrepresentations under N.J.S.A. 59:3-10, and the county, therefore, is immune because its liability must track the employee's liability under N.J.S.A. 59:2-2(b); and
(4) plaintiff has not substantially complied with the notice provisions of N.J.S.A. 59:8-1 et seq.

ELEMENTS TO RECOVER FOR EMOTIONAL DISTRESS NOT SATISFIED.
Plaintiff has failed to establish the elements for negligent infliction of emotional distress.
The law concerning recovery for negligent infliction of emotional distress is clearly set forth in Portee v. Jaffee, 84 N.J. 88 (1980). The four elements that must be proved to recover are:
(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress. [at 101].
In Portee, the court expanded the outer limits of liability for negligent infliction of mental and emotional distress previously set forth in Falzone v. Busch, 45 N.J. 559 (1965). In Portee the court held that a mother who watched her seven-year old son suffer and die when he became trapped in an elevator could recover damages for mental and emotional distress, even though she had not been subjected to any risk of physical harm. Prior to Portee, it was the rule that an accompanying risk of *585 physical harm was necessary to recover for emotional distress. In its holding, the court explicitly removed such a requirement. The Court in Portee addressed the case where a claim was being made for emotional distress but there was the absence of a risk of physical harm. Clearly, the criteria set forth in Portee is applicable to a case such as this  a case where damages for emotional distress are being sought absent an attendant risk of physical harm.
The actions of defendants did not cause the death of plaintiff's son. Defendants did not act until after the death.
The wrongful death statute, N.J.S.A. 2A:31-5, does not allow compensation, directly or indirectly, for emotional loss. Green v. Bittner, 85 N.J. 1, 12 (1980). Since no damages for emotional distress can be recovered in a wrongful death action, obviously none could be recovered for an act which occurred after death.
The incorrect autopsy report, at worst, was an incorrect diagnosis. Misdiagnosis cannot substitute for the third element of the Portee test, observation of the death or injury at the scene of the accident. Lindenmuth v. Alperin, 197 N.J. Super. 385 (Law Div. 1984). Misdiagnosis of one's infant child, who died three days later, was not an event observed by the child's parents, and thus they could not recover for emotional damages; the parents' emotional distress arose from observing the result, rather than an act, and the sensory perception of a shocking event was not present. Ibid.
The shock caused by learning of an incident or accident from others after its occurrence, even before the death of a family member, will not support a cause of action under New Jersey cases and their California antecedents or counterparts. Portee v. Jaffee, supra, 84 N.J. at 97. Dillon v. Legg, 68 Cal.2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (Sup.Ct. 1968).
The requirement of "direct ... sensory and contemporaneous observance" stated in the Portee opinion relates not to *586 witnessing the moment of actual impact, but to witnessing the suffering of the victim. Mercado v. Transport of New Jersey, 176 N.J. Super. 234, 238 (Law Div. 1980).
Even assuming that plaintiff viewed his son's body with four bullets in his head after it was exhumed (although plaintiff submitted no competent proof pursuant to R. 1:6-6 that he had done so) he did it voluntarily and therefore cannot complain that he suffered anguish when he saw his son's body. He himself is to blame that he chose to look at his son's body. Kyles v. Southern Ry. Co., 147 N.C. 394, 61 S.E. 278 (Sup.Ct. 1908).
By local law in New Jersey, once a body is buried it is in the custody of the law. Watson v. Manhattan & Bronx Surface Trans., etc., 487 F. Supp. 1273, 1277 (D.N.J. 1980) and Petition of Sheffield Farms Co., 22 N.J. 548, 556 (1956). See also N.J.S.A. 26:6-37.
After interment, plaintiff had no right to the body. He could not even obtain an order for the disinterment of his son's body except by a clear and convincing showing that the autopsy sought would, in all probability, disclose the information sought. Petition of Sheffield Farms Co., supra. Whereas the prosecutor could obtain an order for the disinterment of a body without even giving notice to the next of kin. N.J.S.A. 40A:9-50.
Plaintiff has also not met the fourth element required for recovery: resulting severe emotional distress. Plaintiff has not suffered severe emotional distress. His answers to interrogatories reveal no damage, no medical bills and no permanency. Plaintiff's statement that he receives certain medication from the Veterans Administration Hospital is not proof that he suffers "severe emotional distress" which resulted from any act of defendants. The only competent proof (R. 1:6-6) of plaintiff's claim are his answers to interrogatories which show his "confinement" was "at the Hospital for medication at 2:00 *587 a.m." and that his present complaint is "the circumstances surrounding my son's death have caused me great anguish and emotional distress." In answer to a question of whether the injury was permanent, plaintiff answered "not applicable."
The Court noted in Portee:
The harm we have determined to be worthy of judicial redress is the trauma accompanying the observation of the death or serious physical injury of a loved one. While any harm to a spouse or a family member causes sorrow, we are here concerned with a more narrowly confined interest in mental and emotional stability .. . To impose liability for any emotional consequence of negligent conduct would be unreasonable; it would also be unnecessary to protect a plaintiff's basic emotional stability. [84 N.J. at 100-101]
Further, the court expressed its confidence:
that limiting judicial redress to harm inflicted on intimate emotional bonds by the death or serious injury of a loved one serves to prevent liability from exceeding the culpability of defendant's conduct. [Id. at 101]
Plaintiff's contention that a trial court does not have to apply literally the criteria of Portee  but should look to traditional concepts of tort liability  would totally destroy the requirements to establish a claim for negligent infliction of emotional distress. The fact that the Portee case did not involve a dead body is of no significance.

THRESHOLD REQUIREMENT FOR PAIN AND SUFFERING NOT MET.
Plaintiff's complaint must be dismissed because his damages are insufficient to maintain a cause of action for pain and suffering under the Tort Claims Act, which states:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000. [N.J.S.A. 59:9-2(d)].
Since plaintiff has not claimed permanent injury or medical treatment expenses, defendants are entitled to partial summary judgment of plaintiff's claim for recovery for pain and suffering. *588 Additionally, since plaintiff has failed to demonstrate any other element of loss, full summary judgment must be granted.
Plaintiff's contention that the statute is inapplicable in this case because the language of the statute and the comments imply that the "pain and suffering" referred to is that which accompanies the direct physical injuries to the plaintiff is incorrect. It is completely contrary to the spirit of the statute and the limitation imposed therein.
Despite plaintiff's contention to the contrary, emotional distress is pain and suffering  at least suffering.
The $1,000 threshold for recovery of damages for pain and suffering has been held not to be applicable where death results. See the Law Division opinion in Polyard v. Terry, 148 N.J. Super. 202 (Law Div. 1977) (Pressler, J.S.C.), rev'd on other grounds 160 N.J. Super. 497 (App.Div. 1978), aff'd o.b. 79 N.J. 547 (1979). However, this case does not involve an action where death resulted, rather, negligent action after a death had occurred. This is not an action for wrongful death either.

THE INDIVIDUAL DEFENDANTS HAVE IMMUNITY BECAUSE AN INCORRECT AUTOPSY REPORT IS A MISREPRESENTATION UNDER N.J.S.A. 59:3-10, FOR WHICH THERE IS IMMUNITY. THIS IMMUNITY FOLLOWS TO THE COUNTY.
A public employee, such as each individual defendant, acting in the scope of his employment is not liable for an injury caused by his misrepresentation.
Plaintiff is barred from maintaining suit against the individual defendants by N.J.S.A. 59:3-10, which states:
A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation.
This provision protects all public employees whether they are engaged in discretionary or ministerial activities. See Malloy v. State, 76 N.J. 515 (1978). (State immune under provisions of *589 Tort Claims Act for improperly informing applicant for real estate license that he had failed the examination).
Even though the policy behind the statute, as set forth in the comment, is to prevent public employees from being discouraged from fully developing and disseminating information to the public for fear of being sued for misrepresentation, the statute specifically immunizes a public employee acting in the scope of his employment from liability caused by his misrepresentation.
Plaintiff is not claiming fraud, bad faith or malice, but mere negligence or mistake. He claims a misrepresentation as to the cause of death of his son. The thrust of the alleged wrongful act is that the individual defendants erred when they originally stated the cause of death.
While this section protects only the employee, a companion provision, N.J.S.A. 59:2-2(b), states:
A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.
This subsection is intended to reduce the complexity of the act by providing that, generally, entity liability tracks employee liability. Margolis & Novack, Tort Claims against Public Entities (1984), Comment to N.J.S.A. 59:2-2(b).
Therefore, since the employees are immune from liability to plaintiff, the county is likewise not liable.

SUBSTANTIAL COMPLIANCE WITH NOTICE PROVISIONS REQUIRED.
County contends that plaintiff failed to substantially comply with the notice provisions of N.J.S.A. 59:8-1 et seq. because plaintiff failed to supply the county with any details or documentation about his alleged injury, as well as failing to return to county the requested medical authorization forms. See Navarro v. Rodriguez, 202 N.J. Super. 520 (Law Div. 1984). The court does not have to determine whether there was *590 meaningful compliance or substantial compliance in light of the other reasons for granting this motion.
Accordingly, defendants' motion for summary judgment to dismiss plaintiff's complaint is granted.