212 N.J. Super. 498 (1985)
515 A.2d 810
DONNA FRAME, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ARIK FRAME, DECEASED AND DONNA FRAME AND CHARLES FRAME, INDIVIDUALLY AND IN THEIR OWN RIGHT
v.
N. KOTHARI, M.D., HEALTH CARE PLAN OF NEW JERSEY, JOHN DOE, M.D., (A FICTITIOUS NAME), AS MEDICAL SUPERVISOR, JANE DOE(S), R.N., (FICTITIOUS NAMES) AS ATTENDING NURSES, AND JANE DOE, R.N. (A FICTITIOUS NAME) AS NURSING SUPERVISOR, INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE.
Superior Court of New Jersey, Law Division Camden County.
Decided October 11, 1985.
*499 Nathan A. Friedman, for plaintiffs; Gary D. Ginsberg (on the brief).
Jayne Piarulli and Gary Piserchia (Parker, McKay & Criscuolo) for defendants N. Kothari, M.D. and Health Care Plan of N.J.
WEINBERG, J.S.C.
Defendant brings this motion for partial summary judgment to dismiss plaintiffs' claims for negligent infliction of emotional distress. These claims arise out of medical treatment prescribed by defendant for plaintiffs' decedent son that allegedly caused their son's death. At issue is whether a physician's misdiagnosis was an event perceived by the parents in order to establish a prima facie case for negligent infliction of emotional distress under the guidelines set forth by our Supreme Court in Portee v. Jaffee, 84 N.J. 88 (1980).
For the purposes of this motion, the factual assertions of plaintiffs as the non-moving party will be considered in the light most favorable to their argument, Rule 4:46-3. Plaintiffs are also entitled to have all reasonable inferences drawn in their favor. See, e.g., Procanik by Procanik v. Cillo, 97 N.J. 339 (1984); Portee v. Jaffee, 84 N.J. 88 (1980); Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954).
This is a medical malpractice action which arises from treatment rendered by defendant, Dr. Kothari, to plaintiff's decedent, Arik Frame on January 22, 1982. On that date, plaintiffs brought Arik, a ten-month old infant, to the Health Care Plan of New Jersey facilities to be treated for injuries sustained when Arik fell down a flight of stairs at approximately 7:30 a.m. After an initial diagnosis of a viral syndrome by Dr. Kothari at 10 a.m., the parents were advised by defendant to *500 observe the child closely and in the event of any change in status to telephone defendant immediately.
At approximately 2:00 p.m., plaintiffs contacted defendant and allege that they advised defendant that the child had vomited three times since their morning visit and the child's eyes had begun to pivot and roll. Dr. Kothari recommended that the child be permitted to sleep and then to be awakened at four-hour intervals.
At 6:00 p.m. after the parents were unable to arouse the child from his sleep, Arik was rushed to the emergency room at Cooper Medical Center. His condition upon arrival was described as semicomatose. Tests revealed a large cerebellar hemorrhage and acute hydrocephalus. Emergency surgery was performed that night but the child died the following morning. The cause of death following autopsy was described as intracerebellar hemorrhage due to a blunt trauma to the skull.
Plaintiffs allege, inter alia, that as a result of Dr. Kothari's treatment and negligent diagnosis, they were caused to suffer great emotional stress in watching their child die slowly while administering the incorrect treatment prescribed by Dr. Kothari.
In Portee, our Supreme Court addressed the issue of recovery for negligent infliction of emotional distress and utilized the approach of the California Supreme Court as outlined in the seminal case in this area, Dillon v. Legg, 68 Cal.2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). Portee, supra, 84 N.J. at 97-100. In Portee, a boy was trapped in an elevator for four hours while his mother watched her son suffer and die. The court allowed the mother to recover damages against the negligent landlord and elevator company for her emotional suffering. The New Jersey Supreme Court adopted the same elements for a prima facie case for negligent infliction of emotional distress that were propounded in Dillon v. Legg:

*501 (1) the death or serious physical injury of another caused by defendant's negligence;
(2) a marital or intimate, familial relationship between plaintiff and the injured person;
(3) observation of the death or injury at the scene of the accident; and
(4) resulting severe emotional distress. Portee, 84 N.J. at 101.[1]
In the present case, defendant contends that the third requirement has not been satisfied. Defendant argues that the "event" which plaintiffs were required to have "perceived" is the fall of the child down the flight of stairs. This interpretation of the facts is inaccurate. This litigation was not instituted to determine liability of a slip and fall accident. Instead, the parties are concerned with the alleged negligence of a physician in a medical malpractice action. In Procanik, supra, 97 N.J. 339, the court found that a physician was liable for negligent infliction of emotional distress to a pregnant woman when he improperly diagnosed and treated a measles condition that subsequently resulted in a birth-defective child. The court noted that in a medical malpractice case a plaintiff's cause of action centers on a physician's treatment once he is faced with a patient's illness, not with the underlying cause of that illness. Id. at 348. It is axiomatic that defendant "must take plaintiff as he finds him."
In determining whether plaintiffs observed an event, the court focuses its attention on the 2:00 p.m. telephone conversation between plaintiffs and Dr. Kothari.
Plaintiffs allege they informed Dr. Kothari that their son's condition had changed significantly since the morning visit to defendant. In the 2:00 p.m. conversation, the defendant recommended a course of treatment that plaintiffs followed. Defendant contends that no perceivable event occurred in the above pattern of facts that would allow recovery. Our Supreme *502 Court has not directly addressed the issue of whether a misdiagnosis can be "perceived" to satisfy the "observation" requirement to recover for negligent infliction of emotional distress under Portee.
Defendant argues that a misdiagnosis is inherently not perceivable and urges the court to adopt the rationale set forth in Lindenmuth v. Alperin, 197 N.J. Super. 385 (Law Div. 1984). In the Lindenmuth case, the plaintiff sought damages for emotional distress when a physician failed to diagnose an intestinal obstruction in a pregnant woman. The obstruction subsequently resulted in the death of plaintiff's child three days after delivery.
The court in Lindenmuth held that a physician's negligent diagnosis did not qualify as a perceivable event under Portee since the parents' distress "arose from observing the result rather than an act" and "the critical element, sensory perception of a shocking event, was not present" Id. at 389.[2] The Lindenmuth decision relied on dicta from another California case, which confronted the issue of whether a parent could recover for emotional distress when a physician negligently diagnosed a child's condition, Jansen v. Children's Hospital Medical Center, 31 Cal. App.3d 22, 106 Cal. Rptr. 883 (1973) In Jansen, a mother sought damages for emotional trauma caused by witnessing the pain-ridden deterioration and death of her daughter in the hospital. She later learned that her child's suffering was due to the failure to diagnose a duodenal ulcer. *503 The Jansen court denied recovery concluding that a misdiagnosis was not an event that was observable by a lay person within the Dillon guidelines. Id.
The Lindenmuth case can be distinguished from the present case. In Lindenmuth, the court stated plaintiff's emotional distress arose from observing the result rather than an act. 197 N.J. Super. at 389. The court concluded that the critical element of sensory perception of a shocking event was not present. Id. The Lindenmuth court followed the reasoning of the California Supreme Court in Justus v. Atchison, 19 Cal.3d 564, 584-585, 565 P.2d 122, 135-136, 139 Cal. Rptr. 97, 110-111 (1977), where the court held that a shock caused by learning of the accident from others after its occurrence will not support a cause of action under Dillon.
In the present case, plaintiffs' emotional distress was a result of a contemporaneous and subsequent observation of an act by defendants. In Lindenmuth, the parents learned of the accident after its occurrence, thus negating the observance of the alleged negligence that gave rise to those results. By contrast, in the present case defendants verbally communicated to plaintiffs the diagnosis before and while the parents were forced to witness the deterioration of their son's condition. This communication by telephone together with the observation of their child's condition fulfills the "observation" requirement for plaintiffs' prima facie case to recover for negligent infliction of emotional distress. Plaintiffs were forced to witness the deterioration of their son's condition based on defendant's misdiagnosis resulting in an observable event under the Portee guidelines. This is in accord with a recent California decision allowing recovery in a factual scenario similar to the present case.
The California Supreme Court recently extended the scope of forseeability in Ochoa v. Superior Court, 39 Cal.3d 159, 703 P.2d 1, 216 Cal. Rptr. 661 (1985). While California law is, of course, not controlling, our sister state has been recognized by our Supreme Court as a leading state in this area. In Ochoa, a *504 mother witnessed the gradual deterioration of her son's condition while in police custody. The medical treatment provided by county authorities was alleged to have been inadequate due to a mistaken diagnosis. The Ochoa court stated that the Jansen interpretation that a claimant perceive a "sudden occurrence" was an "unwarranted restriction" on the Dillon pronunciation of the prima facie case. Id., 703 P.2d at 7-8, 216 Cal. Rptr. at 667-668. In an extensive analysis, the Ochoa court found that the sudden occurrence requirement "arbitrarily limits liability when there is a high degree of forseeability of shock to the plaintiff and the shock flows from an abnormal event, and, as such, unduly frustrates the goal of compensation  the very purpose which the cause of action was meant to further. Id. at 7, 216 Cal. Rptr. at 667.[3] This court is persuaded that the rationale in Ochoa is consonant with the policy pronounced in Portee.
The Portee court's interpretation of the third element of the prima facie case that requires observation of the underlying event at the scene of the accident manifested an intent to limit liability to forseeable consequences arising from situations where there is an explicit duty on the part of the defendant. The court recognized that determining forseeability is not an exact science and stressed that the formulation adopted in Portee should not be construed as to impose arbitrary guidelines in assessing negligently caused emotional damages. In other decisions, the New Jersey Supreme Court has determined that whether a duty exists for indirect damages is ultimately a *505 question of fairness which involves weighing the relationship of the parties, the nature of the risk and the public interest in the proposed solution. See People's Exp. Airlines, Inc. v. Consolidated Rail, 100 N.J. 246, 254-55 (1985); Kelly v. Gwinnell, 96 N.J. 538, 544 (1984); Berman v. Allan, 80 N.J. 421 (1979). Clearly, defendant's actions in the present situation caused grief to the parents. It is equally apparent that such emotional trauma could be a forseeable result of defendant's alleged negligence.
In the landmark case of Berman v. Allan, 80 N.J. 421 (1979), it was held that where a physician negligently failed to inform prospective parents that their child would likely suffer from severe genetic defects, the parents could recover damages for the emotional trauma of discovering their child's condition at birth. Id. at 433. In the case at bar, the alleged failure to properly treat plaintiffs' decedent after defendant was informed of the child's deteriorating condition over the telephone is not dissimilar to a negligent failure to inform. Indeed, the Portee court stated:
Our decision in Berman could support liability in this case. The trauma of witnessing the agonizing death of one's child may be no less substantial than the shocking realization that one's newborn child is profoundly crippled and will remain so for life. [Portee, 84 N.J. at 95.]
In addition, in Procanik, supra, the court implicitly recognized a parent's claim for emotional distress where a physician negligently diagnosed and advised a mother concerning the effects of a rubella syndrome during the first trimester of her pregnancy. Procanik, 97 N.J. at 339 (see Justice Handler, concurring in awarding special damages to the infant, dissenting from part of the decision that limits general damages to the infant for an impaired childhood).
I conclude that the facts of this case allow the parents to assert a claim for emotional distress within the framework of Portee. Accordingly, defendant's motion for summary judgment is denied.
NOTES
[1] It has been noted by the Appellate Division that Portee also closely follows the Restatement, view, see, e.g., 2 Restatement, Torts 2d, § 313, 436 (1965) Eyrich for Eyrich v. Dam, 193 N.J.Super 244, 253-54 (App.Div. 1984).
[2] Portee, supra, 84 N.J. at 97, following the California lead as expressed in Dillon, identified three factors to determine whether an emotional injury would be compensable because "forseeable": (1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. Portee, citing Dillon, supra, 68 Cal.2d at 740, 441 P.2d at 920, 69 Cal. Rptr. at 80.
[3] The Ochoa court specifically discussed the emotional trauma that can result from negligent diagnosis and treatment. "While receiving news that a loved one has been injured or died may cause emotional distress, it is the type of experience for which, in a general way, one is prepared, an experience which is common. In the present case, for example, while it is common to visit a loved one in a hospital and to be distressed by the loved one's pain and suffering, it is highly uncommon to witness the apparent neglect of the patient's immediate medical needs by medical personnel." Ochoa, supra, 703 P.2d at 5-6, 216 Cal. Rptr. at 665-666.