212 N.J. Super. 175 (1986)
514 A.2d 538
JOSEPH DLUGOSZ AND LORRAINE DLUGOSZ, PLAINTIFFS,
v.
FRED S. JAMES & COMPANY, JAMES J. MALONEY AND THE TOWNSHIP OF SOUTH ORANGE VILLAGE, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided April 24, 1986.
*177 Charles J. Farley, Jr. for plaintiffs (Farley & Farley, attorneys).
David M. Hawkins for defendants James J. Maloney and Township of South Orange Village (De Gonge, Garrity & Fitzpatrick, attorneys).
Brian Corrigan for defendant Fred S. James & Company (Michals, Wahl, Silver & Leitner, attorneys).
VILLANUEVA, J.S.C.
This is an action by a former police officer against the municipality which had employed him, its administrator and its insurance agent, to compel them to release a compensation lien and corresponding damages. The complaint also alleged a cause of action for wrongful discharge as a willful and deliberate retaliatory act in violation of N.J.S.A. 34:15-39.1, designed to force him to settle his workers' compensation claim. His wife joined in the complaint in her individual capacity for emotional distress but made no per quod claim.
The sole issue on this motion for summary judgment by the municipality and its administrator is whether they have immunity under the Tort Claims Act for a cause of action based upon a retaliatory discharge by the township administrator.
The court holds that since plaintiffs admit that the act of the administrator in discharging Dlugosz was a "legislative or judicial" act, both the municipality and its administrator have immunity. N.J.S.A. 59:2-2(b), -3(b) and 59:3-2(b).
Plaintiff Joseph Dlugosz, a South Orange police officer, was injured in a work-connected auto accident on May 28, 1981.
*178 This incident gave rise to legal remedies (1) in Workers' Compensation Court and (2) in a third-party action against the other driver. Defendant, Fred S. James & Company (hereinafter "James") is the workers' compensation claims agent for South Orange, which is self-insured.
The law provides that an employer who pays medical expenses, temporary or permanent disability to an injured employee is entitled to be reimbursed and have a lien against the proceeds of any recovery in a third-party action, N.J.S.A. 34:15-40, such as the suit against the other driver involved in this accident.
James, as agent for South Orange, paid medical bills incurred by Dlugosz and tendered checks to him for temporary disability which Dlugosz did not cash but endorsed over to South Orange. Dlugosz continued to receive his wages pursuant to the P.B.A. contract.
Prior to the trial of the third-party action, Dlugosz and South Orange agreed upon a settlement of the workers' compensation case.
Dlugosz in June 1983 settled the accident case for $100,000, all the insurance proceeds available. James was then requested to release the compensation lien so that the third-party carrier would pay all the settlement proceeds to Dlugosz; James refused to do so because of disputes with Dlugosz's attorneys.
However, James, on behalf of his client, South Orange, was dissatisfied with the compensation settlement so he hired new lawyers and had the compensation case reopened, and it is still pending.
Dlugosz, as a member of the South Orange P.B.A., was subject to the collective bargaining agreement with South Orange Village. Pursuant to the agreement, Dlugosz contended that he was entitled to full pay while unable to work, independent of and not subject to any workers' compensation lien. However, James J. Maloney, Township Administrator, construed the union contract to afford Dlugosz sick leave pay for *179 one year, at the end of which time an employee may be discharged.
Dlugosz resumed work May 1982, but stopped work April 1983 as a result of his total disability.
Dlugosz was discharged on May 1, 1984 and South Orange stopped his pay, allegedly due to Maloney's interpretation of the union contract. Dlugosz contends he was discharged by Maloney in retaliation for his pursuing his workers' compensation claim. Dlugosz further claims he was improperly pressured to put in papers for retirement on May 1, 1984 when he had the 25 years necessary for retirement.
This suit was filed June 4, 1984 against James to force him to provide a release of lien and for damages for refusing to do so. It also sought from South Orange and Maloney back pay and damages for the alleged retaliatory discharge resulting from Dlugosz's pursuit of his workers' compensation claim.
Dlugosz brought a motion for summary judgment claiming he was entitled to back pay, i.e., that he should not have been discharged in May 1984 under the sick leave provisions of the union contract. The court held that he was wrongfully discharged and that his absence was primarily attributable to the 1981 accident, and therefore money should not have been deducted under sick leave provisions.
The court also determined that Dlugosz was entitled to the release of lien and ordered James to provide it, which was done. Plaintiffs' claims for compensatory and punitive damages for emotional distress remained.
This opinion supplements the court's reasons given in its oral decision granting summary judgment to South Orange and Maloney.
After the conclusion of plaintiffs' proofs in the trial against James for damages for failure to give plaintiffs a release of the workers' compensation lien, the court dismissed the complaint because it determined that the evidence, together with the *180 legitimate inferences which could be drawn therefrom, failed to show a violation of any duty owed by James to plaintiffs.
Dlugosz contends that he has a viable cause of action for a discriminatory discharge in violation of N.J.S.A. 34:15-39.1[1] because the discharge allegedly was the result of his attempt to claim workers' compensation benefits. That statute was adopted in 1966 affording relief to anyone who was discriminated against for the filing of a compensation claim.
Now, basically, this statute provides both the common-law action and the administrative remedy for an employee who was discharged or discriminated against for claiming workers' compensation benefits. Galante v. Sandoz, Inc., 196 N.J. Super. 568 (App.Div. 1984). The narrow legal question is whether the Tort Claims Act and the immunities provided therein afford immunity to a high-level public employee and a public entity for an alleged discriminatory discharge "of a legislative or judicial nature."

THE TORT CLAIMS ACT IS NOT LIMITED BY THE WORKERS' COMPENSATION ACT BUT BOTH MUST BE CONSTRUED TOGETHER.
Plaintiffs' contention that there is no immunity in this case because it would violate a workers' compensation statute, N.J.S.A. 34:15-39.1, is without logic or case law support.
It is true that the Tort Claims Act should not be "construed to affect, alter or repeal any provision of the workmen's compensation laws of this State." N.J.S.A. 59:1-5. However, the workers' compensation statute relied upon by plaintiffs, N.J.S.A. 34:15-39.1, was adopted in 1966, six years before the Tort Claims Act was adopted. The only reported case dealing with *181 this statute, Lally v. Copygraphics, 173 N.J. Super. 162 (App. Div. 1980), aff'd 85 N.J. 668 (1981), is distinguishable because it involved a private employer not a public entity employer.
There is no basis for finding that the immunities afforded by the Tort Claims Act should in any way be limited by any workers' compensation statute. It did not "affect, alter or repeal" any compensation law because there was sovereign immunity when the 1966 statute was adopted. Fitzgerald v. Palmer, 47 N.J. 106 (1966).
There is nothing in the Tort Claims Act to suggest that the immunities contained therein were in any way intended to be bypassed or limited by the Workers' Compensation Act and, in particular, the retaliatory discharge provision.
JAMES J. MALONEY, ADMINISTRATOR FOR THE TOWNSHIP OF SOUTH ORANGE VILLAGE, IS IMMUNE FROM SUIT FOR DAMAGES BASED UPON HIS DETERMINATION TO DISCHARGE PLAINTIFF.
Historically, public entities within the State of New Jersey enjoyed complete sovereign immunity in tort actions. Ibid. That long established immunity was abrogated by the Supreme Court in Willis v. Dept. of Conservation & Economic Development, 55 N.J. 534 (1970). After a short moratorium, a comprehensive study of sovereign immunity completed by the Attorney General resulted in the enactment of legislation known as the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq., effective July 1, 1972.
The Tort Claims Act re-established sovereign immunity from tort liability absent specific provision within the act for liability. English v. Newark Housing Authority, 138 N.J. Super. 425, 428-429 (App.Div. 1976). To that end, N.J.S.A. 59:1-2 states, in pertinent part:
... while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. *182 Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [Emphasis supplied]
The legislative intent is further indicated in N.J.S.A. 59:2-1(a), which provides:
Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
As applied to employees of public entities, N.J.S.A. 59:3-1(b) provides:
The liability of a public employee established by this act is subject to any immunity of a public employee provided by law and is subject to any defenses that would be available to the public employee if he were a private person.
The basic approach of the act is to re-establish sovereign immunity against tort claims except where there is a statutory declaration of liability. Malloy v. State, 76 N.J. 515, 518-519 (1978). Bell v. Bell, 83 N.J. 417, 423 (1980). The provisions of the act defining the limits of governmental liability and immunity are contained in N.J.S.A. 59:2-1 through -10. New Jersey case law has consistently acknowledged the goals of the act as insulating government from tort liability and discouraging unique claims. Ayers v. Jackson Tp., 202 N.J. Super. 106, 114 (App.Div. 1985); Fair v. Bergen Cty., 151 N.J. Super. 520, 522-523 (App.Div. 1977).
The court should not attempt to attach liability for such a unique and novel cause of action, as a discriminatory discharge for pursuing a workers' compensation claim.
N.J.S.A. 59:3-2(b) provides:
A public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature.
Maloney was acting as administrator of South Orange and was acting in the scope of his employment, which plaintiffs admit in their answers to interrogatories. As administrator, Maloney was responsible for high-level decisions affecting the police department and all departments within the township. *183 Maloney's determination, which forms the basis of plaintiffs' cause of action, was an administrative determination of a judicial or legislative nature, which plaintiffs also admit in their answers to interrogatories. Maloney believed that he was properly interpreting the union contract.
The very purpose of this immunity is to prevent lawsuits of this nature, questioning the motive of high-level decisions,[2] by alleging bad faith or by claiming that an employee's discharge resulted from his pursuit of a workers' compensation claim.
Administrative determinations by high-level public employees of a legislative or a judicial nature are absolutely immune in light of the almost limitless spheres within which public employees must make such determinations. In Irvington General Hospital v. Dept. of Health., 149 N.J. Super. 461, 469-470 (App.Div. 1977), the Appellate Division recognized the complete context of the immunity afforded public employees for administrative decisions of a judicial nature. Clearly, Maloney's determination to terminate Dlugocz's salary in May 1984 was based upon Maloney's interpretation of the union contract. Since Maloney's determination falls within the ambit of the immunities afforded in the New Jersey Tort Claims Act, he is entitled to immunity on all claims for damages, compensatory and punitive.
The immunity provided in N.J.S.A. 59:3-2(b) is qualified by the exception contained in N.J.S.A. 59:3-14 when the public employee's "conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." Burke v. Deiner, 190 N.J. Super. 382 (App.Div. 1983), rev'd on other grounds 97 N.J. 465 (1984). However, since plaintiffs presented no facts in opposition, the court cannot infer that the administrator's action constituted either actual malice or willful misconduct.
*184 Mere allegation in pleading without affidavit or other evidentiary support cannot prevent rendering of summary judgment. New Jersey Mortgage & Inv. Corp. v. Calvetti, 68 N.J. Super. 18 (App.Div. 1961). Movant's uncontradicted papers may be taken as true if they do not themselves show an issue of material fact. Spiotta v. Shelter Cove Estates, 68 N.J. Super. 457 (App.Div. 1961).
Summary judgment procedure pierces the allegations of pleadings to show that facts are otherwise than alleged. Eisen v. Kostakos, 116 N.J. Super. 358 (App.Div. 1971). Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
This case involves a high-level decision by the top administrator of a public entity of a legislative or judicial nature in interpreting employee benefits.
Regardless of how the administrator interpreted the provisions, neither he nor the public entity is subject to liability in damages.
This determination would not have prevented Dlugosz from seeking administrative review for reinstatement under civil service, but he failed to do so.

SINCE ITS ADMINISTRATOR IS IMMUNE, THE PUBLIC ENTITY IS LIKEWISE NOT LIABLE.
Plaintiffs' claim against the Township of South Orange Village is premised on a respondeat superior basis, that is, based upon the alleged wrongful acts of its administrator, James J. Maloney. Specifically, N.J.S.A. 59:2-2(b) provides:
A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.
This subsection is intended to reduce the complexity of the act by providing that, generally, entity liability tracks employee liability. Margolis & Novack, Tort Claims against Public Entities (1986 ed.), Comment to N.J.S.A. 59:2-2(b).
Inasmuch as Maloney's determination falls within the purview of the immunity afforded by the Tort Claims Act, the public entity (South Orange) enjoys the same absolute immunity. *185 Acevedo v. Essex Cty., 207 N.J. Super. 579, 589 (Law Div. 1985).
Plaintiffs have admitted that the administrator's decision to discharge Dlugocz was of a legislative or judicial nature.
Therefore, South Orange has immunity under N.J.S.A. 59:2-3(b), which provides:
A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature.

THRESHOLD REQUIREMENTS NOT MET.
Plaintiffs failed to present any competent evidence under R. 1:6-6 to oppose the motion for summary judgment. At the time of the motion for summary judgment, plaintiffs sought damages only for emotional distress. Although all papers state that Dlugosz was permanently disabled, there was no showing that he or his wife incurred any medical treatment expenses. They had to prove medical expenses of $1,000 or more to recover for pain and suffering against a public entity. N.J.S.A. 59:9-2(d). Hill v. Cochran, 175 N.J. Super. 542 (App.Div. 1980).
Emotional distress constitutes pain and suffering because it encompasses "physical or mental injury or suffering." Botta v. Brunner, 26 N.J. 82, 95 (1958); Doud v. Housing Authority of Newark, 75 N.J. Super. 340, 346 (App.Div. 1962); Ayers v. Jackson Tp., supra, 202 N.J. Super. at 115; Acevedo v. Essex Cty., supra, 207 N.J. Super. at 588.
Therefore, South Orange is not liable to plaintiffs because of plaintiffs' failure to satisfy the $1,000 threshold requirement for medical treatment expenses.

NO § 1983 CLAIM ASSERTED.
Nowhere in the complaint did plaintiffs allege a cause of action based upon violation of, or conspiracy to violate, their civil rights under 42 U.S.C.A. § 1983. Plaintiffs may not have been remediless since that statute affords relief in some instances against governments and their officials, regardless of any immunity provided by a state tort claims act.
*186 Our Tort Claims Act cannot be used to bar a right created by § 1983; New Jersey law, N.J.S.A. 59:2-3, providing that public entities are not liable for injuries resulting from an exercise of judgment or discretion, cannot bar a claim under this section. Gipson v. Bass River Tp., 82 F.R.D. 122, 82 F.R.D. 122 (D.C.N.J. 1979).
Section 1983 provides a private, civil remedy for violations of the Fourteenth Amendment, including those provisions in the Bill of Rights incorporated into the Due Process clause of the Fourteenth Amendment.
Governmental entities are not liable merely because of the misbehavior of their officers and employees. Rather, liability is predicated on a determination that the alleged wrongdoing either: "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers"; or resulted from a policy or custom made "by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't. of Social Services of N.Y., 436 U.S. 658, 690, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court stated:
Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory. [436 U.S. at 691, 98 S.Ct. at 2036]
... Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. [Id. at 694, 98 S.Ct. at 2037]
A claim against a borough brought under 42 U.S.C.A. § 1983, which creates civil action for deprivation of rights under color of law, grounded solely on respondeat superior could not stand. Bernstein by Beldock v. Aivazis, 584 F. Supp. 606 (D.C.N.J. 1983).
A governmental entity is liable in an official-capacity suit under § 1983 only when the entity is a moving force behind the deprivation, thus requiring the entity's policy or custom to have *187 played a part in the violation of federal law. Kentucky v. Graham, 473 U.S. ___, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).
In this case, South Orange's policy or custom may well have played a part in Maloney's actions, but it is too late now for plaintiffs to allege it.
In Nicoletta v. No. Jersey District Water Supply Commission, 77 N.J. 145, 167 (1978), the discharge of a police officer as an employee by a water district supply commission was immunized. The court therein recognized that it was not dealing with a § 1983 case but indicated that, even if it were, the basis for such a damage remedy would not exist  because termination of public employment which is terminable at will does not rise to a due process requirement in the form of notice and hearing. They further noted that the qualified immunity of a public body under federal law is concordant with the New Jersey legislative policy as expressed in N.J.S.A. 59:2-3(a) and -3(b) or our Tort Claims Act. Id. at 168.

CONCLUSION
The motion by the Township of South Orange Village and James J. Maloney for summary judgment to dismiss plaintiffs' complaint is granted.
NOTES
[1] It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer ...
[2] This opinion does not consider whether immunity exists when a low-level employee of a public entity discharges another employee.