604 A.2d 649

ELEANOR NOVAK, PLAINTIFF–RESPONDENT, v. CAMDEN COUNTY HEALTH SERVICES CENTER BOARD OF MANAGERS AND RICHARD J. DODSON, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 3, 1992—Decided March 25, 1992.

Before ANTELL, BAIME and THOMAS, JJ.

*Joseph M. Weinberg* argued the cause for appellants (*Weinberg & McCormick*, attorneys; *Donafaye Wilson Zoll* on the brief).

*Joseph Asbell* argued the cause for respondent (*Joseph Asbell & Associates*, attorneys; *Joseph Asbell* on the letter-brief).

BAIME, J.A.D.

This appeal requires us to reconcile two apparently inconsistent statutes. *N.J.S.A.* 34:15–44 provides that an injured public employee must remain on the payroll while receiving workers' compensation benefits. *N.J.S.A.* 11A:8–1 states that a permanent public employee may be laid off for economy, efficiency or other related reasons. At issue is whether a public employee who is currently receiving workers' compensation benefits may be discharged along with others in a general reduction in force caused by budgetary problems.

Plaintiff Eleanor Novak was employed by defendant Camden County Health Services as an occupational therapy aide. On April 25, 1990, she sustained a work related injury and began receiving temporary disability benefits. As a result of the County's financial difficulties, defendant's chief executive officer approved a reorganization plan which eliminated the position of occupational therapy aide. On March 1, 1991, plaintiff and four other employees holding the same job title received termination notices. Three of these individuals had accumulated greater seniority rights than plaintiff. Plaintiff and the others were discharged effective April 15, 1991. We digress to note that plaintiff's termination was without prejudice to her

right to receive workers' compensation. She continues to collect temporary disability benefits.

Plaintiff instituted this action in the Chancery Division, seeking to restrain defendant from terminating her employment while she is receiving workers' compensation. The Chancery Division granted injunctive relief, directing defendant to continue to list plaintiff as an employee and make full pension contributions during her disability. In reaching this conclusion, the court reasoned that *N.J.S.A.* 34:15–44 entitles an injured employee to be maintained on the payroll and to receive all statutory benefits attendant to the status of employee while collecting workers' compensation benefits. This statutory entitlement was said to supersede the right of a public entity to abolish a job title to affect economy or efficiency. We disagree and reverse.

We begin our analysis with *N.J.S.A.* 34:15–44. which reads as follows:

> When any payment of compensation under this chapter shall be due to any public employee, the name of the injured employee, or in case of his death, the names of the persons to whom payment is to be made as his dependents, *shall be carried upon the payroll,* and payment shall be made in the same manner and from the same source in which and from which the wages of the injured employee were paid. In event that any extraordinary payment larger than the weekly rate of compensation shall be due, such payment shall be made from any fund available for the maintenance or incidental expenses of the institution, department, board or governing body under and by which the employee was employed. (emphasis added).

This section was a part of supplemental legislation enacted in 1913 which extended the workers' compensation system to employees of "official bodies." L.1913, c. 145. Although it has survived over the years, we have found no reported opinion dealing with its precise meaning or its application.

*N.J.S.A.* 11A:8–1 provides in pertinent part:

> *A permanent employee may be laid off for economy, efficiency or other related reason.* The employee shall be demoted in lieu of layoff whenever possible. A permanent employee shall receive 45 days' written notice, unless in State government a greater time period is ordered by the commissioner, which shall be served personally or by certified mail, of impending layoff or demotion and the reasons therefor. The notice shall expire 120 days after service unless

extended by the commissioner for good cause. At the same time the notice is served, the appointing authority shall provide the commissioner with a list of the names and permanent titles of all employees receiving the notice. The board shall adopt rules regarding the order of layoff and employee rights upon recommendation by the commissioner. The commissioner shall consult with the advisory board representing labor organizations prior to such recommendation. (emphasis added).

This section is part of the Civil Service Act (*N.J.S.A.* 11A:1–1 through :12–6), which was adopted in 1986. The statute codifies the "well-settled" principle that "a classified civil servant may be discharged or his position abolished where [such action is taken as part of] a good faith effort to achieve governmental economy or efficiency. . . ." *Pros., Det., Essex Cty. v. Hudson Bd. of Freeholders,* 130 *N.J.Super.* 30, 43, 324 *A.*2d 897 (App. Div.), *certif. denied,* 66 *N.J.* 330, 331 *A.*2d 30 (1974). *See also Barringer v. Miele,* 6 *N.J.* 139, 145, 77 *A.*2d 895 (1951); *Byrnes v. Boulevard Com'rs, Hudson Cty.,* 121 *N.J.L.* 497, 500, 3 *A.*2d 456 (E. & A.1939); *Padavano v. Tp. of North Bergen,* 13 *N.J.Super.* 6, 9–10, 80 *A.*2d 121 (App.Div.1951).

These statutes were enacted at different times and for wholly different purposes. Although there may be a superficial contradiction between them, it is clear to us that the statutes were intended to operate in entirely different spheres. The power to lay off permanent employees for reasons of economy and efficiency is clearly stated in *N.J.S.A.* 11A:8–1. *N.J.S.A.* 34:15–44 is completely unconcerned with the right of an injured public employee to retain his or her employment. Its language is limited to specifying the source of compensation payments, a fact demonstrated by its direction that the names of persons to whom dependency payments are to be made in case of the employee's death shall also be carried upon the payroll with payment to "be made in the same manner and from the same source in which and from which the wages of the injured employee were paid." It cannot be seriously thought that by the use of this language the Legislature intended to confer any form of job security upon the employee's dependents. In our

view, the lawmakers no more intended to create such security for the injured employee than they did for his dependents.

Although the statutes are seemingly inconsistent, the policies underlying them can be fairly accommodated. *N.J.S.A.* 34:15–44 was designed to clarify the right of public employees to collect workers' compensation and to provide a bookkeeping mechanism for the payment of appropriate claims. We perceive no legislative intent to confer additional rights to job security. In this respect, we note that other statutes protect an employee who has sought compensation benefits against retaliation by his employer. The ability of an employer to chill the employee's exercise of his rights under the workers' compensation scheme through retaliatory discrimination motivated the Legislature to enact *N.J.S.A.* 34:15–39.1. That statute makes it unlawful "for any employer ... to discharge or in any other manner discriminate against an employee ... because such employee has claimed ... work[ers'] compensation benefits...." *Ibid. See Galante v. Sandoz, Inc.,* 192 *N.J.Super.* 403, 409, 470 *A.2d* 45 (Law Div.1983), *aff'd,* 196 *N.J.Super.* 568, 483 *A.2d* 829 (App.Div.1984), *appeal dismissed,* 103 *N.J.* 492, 511 *A.2d* 665 (1986). In addition, we have found a judicially cognizable cause of action for compensatory and punitive damages based upon such retaliation wholly apart from the rights and protections accorded by the statute. *See Lally v. Copygraphics,* 173 *N.J.Super.* 162, 165, 413 *A.2d* 960 (App.Div.1980), *aff'd,* 85 *N.J.* 668, 428 *A.2d* 1317 (1981). However, no court has expanded the definition of a discriminatory discharge to include a termination occasioned by a reduction in force designed to achieve economy. *Galante v. Sandoz, Inc.,* 192 *N.J.Super.* at 409–10, 470 *A.2d* 45. We are thoroughly convinced that this was not the purpose of the Legislature when it enacted *N.J.S.A.* 34:15–44. The overriding fact is that the objective of *N.J.S.A.* 34:15–44, making workers' compensation benefits available to public employees, can be fully achieved without doing violence to the legitimate governmental interest in seeking economy and efficiency.

In contrast, barring government from taking reasonable measures to achieve economy through a reduction of its work force and the elimination of job titles would seriously undermine the civil service system. The primary object of the Civil Service Act is to "secure efficient public service at all levels of government." *Malone v. Fender*, 80 *N.J.* 129, 140, 402 *A.*2d 240 (1979). In that respect, it has been said that "[t]he welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law...." *Caldaro v. Ferber*, 39 *N.J.* 314, 319, 188 *A.*2d 576 (1963) (quoting *Borough of Park Ridge v. Salimone*, 21 *N.J.* 28, 44, 120 *A.*2d 721 (1956)). Against this backdrop, we do not read *N.J.S.A.* 34:15–44 as barring a public employer from eliminating a position and terminating employment of a worker in furtherance of a legitimate governmental objective. Technological and business innovations, as well as hard economic facts, have often necessitated changes and shifts in the work force. *Cf. Linn v. Beneficial Commercial Corp.*, 226 *N.J.Super.* 74, 79–80, 543 *A.*2d 954 (App.Div.1988). Absent some countervailing policy clearly expressed by the Legislature, we should not compel government to operate inefficiently or risk insolvency in the interest of job security.

The preeminence of *N.J.S.A.* 11A:8–1 over *N.J.S.A.* 34:15–44 is also impelled by *N.J.S.A.* 11A:12–1. That statute provides that any law inconsistent with the provisions of the Civil Service Act is "superseded." *N.J.S.A.* 11A:12–1. To the extent that *N.J.S.A.* 11A:8–1 contradicts *N.J.S.A.* 34:15–44, the former statute is to prevail over the latter section.

We note that a contrary reading of the statutes would lead to anomalous results. If the Chancery Division's decision were to stand, a person collecting workers' compensation benefits would retain his employment, while those with seniority would be discharged. In the context of the facts here, plaintiff would be allowed to receive all benefits attendant to being "carried on the payroll," while three other occupational therapy aides with far greater experience and seniority would be terminated. The

discordance would not stop there. Complex procedures and rules regarding "bumping rights" would also be affected. *See N.J.A.C.* 4A:8–1.1(b); *N.J.A.C.* 4A:8–2.4.

We read *N.J.S.A.* 11A:8–1 and *N.J.S.A.* 34:15–44 consonant with their underlying policies and the legislative goals sought to be achieved. We hold that an injured public employee who receives workers' compensation benefits may be discharged pursuant to *N.J.S.A.* 11A:8–1 in order to achieve economy or efficiency. Termination of his employment does not affect whatever right he or she may have to continue to collect appropriate workers' compensation benefits.

Before leaving the subject, we briefly address plaintiff's contention that *N.J.S.A.* 43:15A–25.1a compels a different conclusion. This statute provides that "[i]f any member of the retirement system receives periodic benefits payable under the Work[ers'] Compensation Law during the course of his *active* service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer." (emphasis added). Contrary to plaintiff's assertion, this statute does not mandate continued employment of an injured employee. We have underscored the word "active." By its terms, this statute requires continued contribution to the retirement fund only with respect to an employee in "active" service, *i.e.,* one who collects workers' compensation but who continues to be employed.

Also inapposite is *DeLorenzo v. Newark,* 134 *N.J.L.* 7, 45 *A.*2d 686 (E. & A.1946). There, the court was confronted with the issue whether a public employee receiving workers' compensation benefits may also collect a pension. In distinguishing between the status of a person receiving compensation benefits and one collecting a pension, the court noted that a "pensioner severs all relationship of employer and employee." *Id.* at 9, 45 *A.*2d 686. The court noted, in contrast, that "[a]n employee receiving work[ers'] compensation is under the relationship of employee and employer, as is indicated by the fact that such

employee must continue to be carried on the public payroll pursuant to *R.S.* 34:15–44." *Id.* at 9–10, 45 *A.*2d 686. Clearly, this observation was made in the context of a factual scenario and a legal issue wholly foreign to those present here. The court in *DeLorenzo* had no occasion to address the interplay between *N.J.S.A.* 11A:8–1 and *N.J.S.A.* 34:15–44. We do not consider the court's statement meaningful or binding within the context of the issue presented in this case.

Reversed.