294 N.J. Super. 90 (1996)
682 A.2d 744
CHARLOTTE M. BROOK, PLAINTIFF-APPELLANT,
v.
JEFFREY A. APRIL, MARY J. MAUDSLEY, ANTHONY J. HARVATT II, AND CAROL GOLOFF, PRACTICING LAW AS APRIL & MAUDSLEY, P.A., DEFENDANTS/THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
HUGH RILEY AND TERESA LANG, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1996.
Decided September 30, 1996.
*92 Before Judges DREIER, KESTIN and CUFF.
John F. Hipp argued the cause for appellant.
Mary J. Maudsley argued the cause for respondents (April, Maudsley & Goloff, attorneys; Ms. Maudsley on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff in this legal malpractice action appeals from the trial court's grant of defendants' motion for summary judgment and its denial of plaintiff's motion for summary judgment on a single issue, based upon the trial court's understanding of the requirements of the Tort Claims Act, N.J.S.A. 59:1-1 to :12-3. The motion judge held that plaintiff's underlying claims for wrongful discharge, grounded upon the Workers' Compensation Law's prohibition against retaliation, N.J.S.A. 34:15-39.1, were subject to the immunities conferred by the Tort Claims Act upon public entities and employees with respect to claims arising from discretionary activities, N.J.S.A. 59:2-3(d), :3-2(d).
In reaching his decision, the motion judge was guided by Dlugosz v. Fred S. James & Co., 212 N.J. Super. 175, 514 A.2d 538 (Law Div. 1986), the reasoning of which he adopted in concluding that plaintiff did not qualify to make a claim under the Tort Claims Act. We overrule the holding in Dlugosz insofar as it bears upon the relationship between N.J.S.A. 34:15-39.1 and the Tort Claims Act. We nevertheless affirm the trial court's orders on the motions for summary judgment for other reasons.

I
Because the matter is before us on an appeal from a grant of defendants' motion for summary judgment, the fairly presented *93 facts must be viewed in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995). She is to be accorded "the benefit of all favorable inferences that may legitimately be drawn from the record" before the trial court. Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 135, 516 A.2d 220 (1986). See also Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75, 110 A.2d 24 (1954).
Plaintiff was employed as a police officer in the Stone Harbor Police Department (Department) from 1988 to 1991. She contracted pneumonia during the winter or spring of 1990, and was absent from her job for a period of three to four weeks. During that time, the Department brought disciplinary charges against plaintiff, alleging abuse of sick leave. Plaintiff retained defendant Harvatt to represent her in the disciplinary action. Harvatt was then an associate in defendant law firm, April & Maudsley.
On June 9, 1990, plaintiff suffered a herniated disc while on patrol. She filed a workers' compensation claim and was on disability leave collecting benefits when she received a letter dated January 7, 1991, informing her that she would be terminated from the Department as of January 25, 1991. Plaintiff communicated with Harvatt. She alleges that Harvatt assured her that the Department could not terminate her in that manner and undertook to handle the matter, saying: "You worry about getting better.... We have plenty of time to go after these guys."
The complaint alleges, "among other things," negligence in failing to file a timely notice of claim under the Tort Claims Act. It is undisputed that none of the defendants filed a notice of claim on behalf of plaintiff, N.J.S.A. 59:8-4, ordinarily required by the Tort Claims Act as a jurisdictional prerequisite, N.J.S.A. 59:8-3; see also N.J.S.A. 59:8-8a; Fuchilla v. Layman, 109 N.J. 319, 330, 537 A.2d 652, cert. denied, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). There is no contention that plaintiff was specifically advised that she needed to inform the municipality and the police department of her claims in order to preserve her rights.
*94 In addition to denying negligence generally, defendants contend that, on February 4, 1991, before the ninety-day notice period expired, April & Maudsley forwarded plaintiff's file to another law firm for representation on all pending matters. Neither that firm nor any of its members is a defendant in this action. Eventually, that firm's involvement in the case ended and plaintiff retained another firm, not a party to this appeal, which was in turn succeeded by her present attorney. With respect to the underlying claim, the municipality and its police chief, plaintiff's supervisor, (collectively, the municipal defendants) have maintained that plaintiff's dismissal resulted from budgetary considerations and reductions in work force.
The motion judge concluded that defendants' liability depends directly on the potential underlying liability of the municipal defendants in respect of plaintiff's wrongful discharge claim. The judge reasoned that, if the municipal defendants were immune under the Tort Claims Act, defendants in this suit could not be liable for omitting to file the notice required to qualify plaintiff as a claimant under that Act.

II
The focus of our consideration is upon N.J.S.A. 59:1-5, which provides:
Nothing in this act shall be construed to affect, alter or repeal any provision of the workmens' compensation laws of this State.
Although articulated in a different context, our view of the legislative design in enacting this section of the Tort Claims Act, expressed in Travelers Ins. Co. v. Collella, 169 N.J. Super. 412, 416, 404 A.2d 1250 (App.Div. 1979), is definitive:
[T]he purpose of this very general statute was simply to preserve the direct obligation which a public entity might have to its employees under the workers' compensation statutes. (emphasis omitted)
The basis of decision in Dlugosz was at variance with that insight:
Plaintiffs' contention that there is no immunity in this case because it would violate a workers' compensation statute, N.J.S.A. 34:15-39.1, is without logic or case law support.

*95 It is true that the Tort Claims Act should not be "construed to affect, alter or repeal any provision of the workmen's compensation laws of this State." N.J.S.A. 59:1-5. However, the workers' compensation statute relied upon by plaintiffs, N.J.S.A. 34:15-39.1, was adopted in 1966, six years before the Tort Claims Act was adopted. The only reported case dealing with this statute, Lally v. Copygraphics, 173 N.J. Super. 162, 413 A.2d 960 (App.Div. 1980), aff'd. 85 N.J. 668, 428 A.2d 1317 (1981), is distinguishable because it involved a private employer not a public entity employer.
There is no basis for finding that the immunities afforded by the Tort Claims Act should in any way be limited by any workers' compensation statute. It did not "affect, alter or repeal" any compensation law because there was sovereign immunity when the 1966 statute was adopted. Fitzgerald v. Palmer, 47 N.J. 106, 219 A.2d 512 (1966).
There is nothing in the Tort Claims Act to suggest that the immunities contained therein were in any way intended to be bypassed or limited by the Workers' Compensation Act and, in particular, the retaliatory discharge provision.
[212 N.J. Super. at 180-81, 514 A.2d 538.]
Further, Dlugosz was decided almost two years before the decision in Fuchilla v. Layman, supra, 109 N.J. 319, 537 A.2d 652. Although Fuchilla dealt with questions relating to the notice requirements of the Tort Claims Act rather than directly with its immunity grants,[1] because of the Supreme Court's general approach, the interplay between the immunity provisions of the Tort Claims Act and other enactments that confer causes of action in seeming conflict is no longer as arcane as it once was.
The Court in Fuchilla began its exploration of the relationship between the Tort Claims Act and the Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (LAD), by remarking upon an absence of legislative history on the question, noting that it was not even clear whether the Legislature's design was for discrimination to be regarded as a tort.[2]Fuchilla, supra, 109 N.J. at 333, 537 A.2d *96 652. The Court recognized "that the Legislature intended that the [Tort Claims] Act would provide a comprehensive scheme for adjudicating tort claims against public entities." Ibid. Resolution of the issue framed depended upon a determination of legislative intent. Id. at 334, 537 A.2d 652. In the search for such intent, "a court should consider the entire legislative scheme." Ibid. It should "read the [Tort Claims] Act in the light of the [LAD]. So viewed, the inquiry becomes whether the Legislature intended a discriminatory act allegedly committed by a public entity to be an injury subject to the notice requirements of the [Tort Claims] Act." Ibid.
The Court focused upon the clear public policy of the State as evinced in the LAD "to abolish discrimination in the work place." Ibid. It then contrasted the purpose of the Tort Claims Act "to provide compensation to tort victims without unduly disrupting governmental functions and without imposing excessive financial burden on the taxpaying public." Id. at 335, 537 A.2d 652.
With their contrasting backgrounds in mind, we turn to the history, purpose, and text of each statute. As a historical matter, the [Tort Claims] Act is the legislative response to this Court's decision in Willis v. Department of Conservation & Economic Dev., 55 N.J. 534, 264 A.2d 34 (1970), which abrogated total governmental immunity from tort liability. According to the Act's stated purpose, it is "the public policy of the state that public entities shall only be liable for their negligence within the limitations of this Act." N.J.S.A. 59:1-2. That declaration pertaining to negligent conduct sheds little light on the Legislature's intention concerning discrimination, which depends on proof of motive or intent. Goodman v. London Metals Exch., Inc., 86 N.J. 19, 30, 429 A.2d 341 (1981) (proof of discriminatory motive or intent a crucial element of a discrimination case). Cf. Andersen v. Exxon Co., 89 N.J. 483, 446 A.2d 486 (1982) (motive to discriminate must be found objectively reasonable if it is to serve as a defense). The difference between the substantive standard for negligence, which was clearly a legislative concern in the [Tort Claims] Act, and the [LAD]'s implicit emphasis on motive or intent suggests that the Legislature did not intend that the [Tort Claims] Act apply to discrimination claims under the [LAD]. In recognizing that difference, we need not determine whether the [Tort Claims] Act is limited to negligent conduct.
Consistent with its purpose of restricting governmental liability in tort, the Act provides that failure to notify a public entity within ninety days of accrual results in *97 the bar of a tort claim. N.J.S.A. 59:8-8a. That relatively short time for filing was drafted to provide public entities with prompt notice so they could investigate and settle claims, N.J.S.A. 59:8-3 comment (a), and, thereby, protect the public fisc.
Reflecting its concern with eliminating discrimination, the [LAD] contains different procedural requirements.
* * * *
Additionally, the 1977 amendment extending the definition of "employers" to include public entities, N.J.S.A 10:5-5(e), reflects the Legislature's intention to subject those entities to the procedures of the [LAD].
Yet another difference between the two statutes is the manner in which each addresses damages. The [Tort Claims] Act prohibits the award of damages for pain and suffering, except "in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00" N.J.S.A. 59:9-2(d). * * *
By comparison, the [LAD] does not prohibit damages for pain and suffering. * * * Arguably, therefore, the Legislature contemplated different treatment for the humiliation and pain and suffering of discrimination victims than that provided by the [Tort Claims] Act.
Our reading of the history, purpose, and provisions of the two acts leads us to conclude that the Legislature did not intend that claims of discrimination be subject to the notice requirements of the [Tort Claims] Act. We do not hold, or even suggest, that the Legislature may not include discrimination claims within the Act. We conclude only that the Legislature has not yet done so. In sum, the notice requirement of the Act does not apply to plaintiff's claims of discrimination ... under either section 1983 or the [LAD].
[Id. at 335-38, 537 A.2d 652.]

III
Plaintiff's cause of action for wrongful discharge was based upon a section of the Workers' Compensation Law, N.J.S.A. 34:15-1 to -128, prohibiting discharge or discrimination against an employee in retaliation for filing workers' compensation claims or related conduct:
It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement. For any violation of this act, the employer or agent shall be punished by a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not more than 60 days or both. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such *98 discrimination; provided, if such employee shall cease to be qualified to perform the duties of his employment he shall not be entitled to such restoration and compensation.
[N.J.S.A. 34:15-39.1.]
We are not confronted with the introductory problem that faced the Supreme Court in Fuchilla, whether the underlying action can be classified as a tort subject to the limitations imposed by the Tort Claims Act. The question whether N.J.S.A. 34:15-39.1 confers a civil remedy in the nature of a tort claim was definitively resolved in the affirmative in Lally v. Copygraphics, 85 N.J. 668, 670-71, 428 A.2d 1317 (1981), aff'g 173 N.J. Super. 162, 413 A.2d 960 (App.Div. 1980). See also Kletzkin v. Board of Educ., 136 N.J. 275, 289, 642 A.2d 993 (1994) (Stein, J., dissenting) ("Such a dismissal ... [of a work-injured public employee on involuntary leave, in order to foreclose the acquisition of tenure] might be challenged as inconsistent with the statutory mandate against discharge of an employee for claiming workers' compensation benefits, see N.J.S.A. 34:15-39.1, and could expose a school board to suit by dismissed disabled employees for retaliatory discharge." (citing Lally v. Copygraphics, supra, 85 N.J. at 671, 428 A.2d 1317)).
Although it may not be entirely accurate to classify workers' compensation as a category of tort, see 1 Arthur Larson, Workmen's Compensation Law, § 1.20 (1990), that administrative cause of action is at least a hybrid, ibid., with sufficiently close resemblance to a tort to be considered nominally subject to the sweep of the Tort Claims Act, which deals with rights to make certain types of personal injury claims against public officers and entities. The separate but related cause of action for wrongful discharge, whether based on statute or common law, is, however, more clearly a tort claim. See Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 65-73, 417 A.2d 505 (1980).
Furthermore, no less than with respect to personal injury claims based upon the LAD, workers' compensation claims and actions derived from them reflect the Legislature's clear choice in effecting public policy, in particular to provide assured compensation *99 to employees for work-connected injuries according to an established schedule. See Larson, supra, § 1.20. Just as "the State ... and all public officers, agencies, boards or bodies[,]" are explicitly subject to the scope of the LAD, N.J.S.A. 10:5-5(e), so is public employment covered by the Workers' Compensation Law. See N.J.S.A. 34:15-36, -43. There is no basis in the statutory scheme for holding public officers and entities who engage in conduct that frustrates the legislative policy embodied in the Workers' Compensation Law to be less amenable to the civil liability established in N.J.S.A. 34:15-39.1 than they are to the penal sanctions established in that provision or the administrative penalty authorized by N.J.S.A. 34:15-39.2. See Lally v. Copygraphics, supra, 85 N.J. at 670-73, 428 A.2d 1317. See also Cole v. Township of Roxbury, 257 N.J. Super. 108, 117, 607 A.2d 1366 (App.Div. 1992); Novak v. Camden County Health Serv. Ctr., 255 N.J. Super. 93, 97, 604 A.2d 649 (App.Div. 1992); Theodore v. Dover Bd. of Educ., 183 N.J. Super. 407, 410-11, 444 A.2d 60 (App.Div. 1982).
By way of additional similarity between the LAD, the Workers' Compensation Law, and the Tort Claims Act, each is governed by its own unique procedural requirements established in law by way of providing comprehensive schemes for achieving the Legislature's respective public policy goals. The comprehensiveness of the statutory schemes was a significant factor in Fuchilla leading the Supreme Court to conclude that liability under the LAD was independent of the requirements of the Tort Claims Act. The same conclusion governs the relationship between causes of action conferred by the Workers' Compensation Law and the categorical immunities established in the Tort Claims Act.
The one significant difference between this case and Fuchilla also commends as correct the conclusion that causes of action established by the Workers' Compensation Law are independent of the Tort Claims Act. Where some measure of uncertainty attended the Supreme Court's consideration of the issues presented in Fuchilla because the Legislature had never specifically addressed the relationship between the Tort Claims Act and the *100 LAD, we are directly assisted by the explicit provision of the Tort Claims Act defining the relationship between its limitations and the rights conferred by the Workers' Compensation Law. As we have already noted, N.J.S.A. 59:1-5 provides:
Nothing in this act shall be construed to affect, alter or repeal any provision of the workmen's compensation laws of this State.
The plain sense of this provision, adopted in 1972, six years after the retaliatory discharge provision, N.J.S.A. 34:15-39.1, was added to the Workers' Compensation Law, is that the Legislature intended to preserve any and all rights conferred by the latter, notwithstanding the immunities declared in the Tort Claims Act. The conclusions expressed in Dlugosz, supra, 212 N.J. Super. at 181, 514 A.2d 538, therefore, have no provenance in legislative history. As the Supreme Court effectively held in Fuchilla, the Tort Claims Act does not trump other statutes that have independent bases in public policy. Cf. Abbamont v. Piscataway Tp. Bd. of Educ., 138 N.J. 405, 650 A.2d 958 (1994).
We note also that plaintiff's cause of action for wrongful discharge based on unlawful retaliatory conduct depends upon proof of motive or intent, much as did the plaintiff's claims for unlawful discrimination in Fuchilla. See Fuchilla, supra, 109 N.J. at 335, 537 A.2d 652. This is yet another reason for seeing such a cause of action to be outside the ambit of the Tort Claims Act, which "is concerned essentially with tortious conduct involving fault in the sense of a want of reasonable care...." Id. at 339, 537 A.2d 652 (Handler, J., concurring). See also id. at 338-42, 537 A.2d 652 (Handler, J. concurring); Fuchilla v. Layman, 210 N.J. Super. 574, 578-80, 510 A.2d 281 (App.Div. 1986), aff'd 109 N.J. 319, 537 A.2d 652, cert. denied, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); McDonough v. Jorda, 214 N.J. Super. 338, 349-50, 519 A.2d 874 (App.Div. 1986), certif. denied, 110 N.J. 302, 540 A.2d 1282 (1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); Timber Properties, Inc. v. Chester Tp., 205 N.J. Super. 273, 286-87, 500 A.2d 757 (Law Div. 1984); cf. Calderon v. Machinenfabriek Bollegraaf Appingedam BV, 285 N.J. Super. 623, 636-37, 667 A.2d 1111 (App.Div. 1995), certif. denied 144 N.J. 174, 675 A.2d 1122 (1996).
*101 Accordingly, by application of the insights furnished by the Supreme Court in Fuchilla and the interpretive methods employed there, we overrule the holding in Dlugosz, and conclude that none of the immunities conferred in the Tort Claims Act apply to claims arising from the Workers' Compensation Law, including civil actions based upon retaliatory conduct prohibited by N.J.S.A. 34:15-39.1. From this conclusion, and our determination, also based on Fuchilla, that rights conferred by the Workers' Compensation Law exist independently of the provisions of the Tort Claims Act, it follows that defendants in this legal malpractice action were not obliged to file a notice of claim and, thus, as a matter of law, were not negligent in their omission to do so. Therefore, via a different reasoning process, we reach the same ultimate conclusion as the trial court did, one that requires dismissal of those claims for professional negligence that are based upon failure to conform with the requirements of the Tort Claims Act. This ruling is without prejudice to plaintiff's right to proceed with respect to any claims embodied in the complaint that have no relationship to the Tort Claims Act.
Affirmed.
NOTES
[1] The Court in Fuchilla, supra, 109 N.J. at 323-30, 537 A.2d 652, addressed immunity issues arising from the Eleventh Amendment to the United States Constitution in the context of a 42 U.S.C.A. § 1983 claim, but dealt with no State law issues of immunity.
[2] The Court has since addressed the issue in the context of the Statute of Limitations, N.J.S.A. 2A:14-1 to -34, holding that civil actions based upon violations of the LAD "are most like personal-injury claims ... [and] that the two-year personal-injury statute of limitations should apply." Montells v. Haynes, 133 N.J. 282, 286, 627 A.2d 654 (1993).