931 A.2d 622

WILLIAM M. LAKES AND JENNIFER LAKES, PLAINTIFFS
v. CITY OF BRIGANTINE, ET AL, DEFENDANTS.

Superior Court of New Jersey
Law Division Atlantic County

Decided January 18, 2007.

*Arthur J. Murray,* for plaintiff (*Jacobs & Barbone,* attorneys).

*Todd J. Gelfand,* for defendants (*Barker, Douglas & Scott,* attorneys).

PERSKIE, J.S.C.

Defendants brought a summary judgment motion, seeking dismissal of all counts of the complaint against all defendants. Most of the issues raised by the motion have been determined in previous rulings; what remains for consideration is the claim by the defendants that the complaint, brought pursuant to the provisions of the Conscientious Employee Protection Act, *N.J.S.A.* 34:19–1 to –8 ("CEPA"), must be dismissed for failure to provide notice of the claim to the defendants pursuant to the requirements of the Tort claims Act, *N.J.S.A.* 59:8–3 to –11 ("TCA"). Counsel and the court have not found a reported decision on the question by a New Jersey court, although several federal court decisions address the issue. For the reasons that follow, I conclude that the notice provisions of TCA are not applicable to claims brought pursuant to CEPA and the defendants' motion to dismiss the complaint must therefore be denied.

For purposes of this motion, the allegations of the complaint are accepted as the factual record. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.2d* 146 (1995). Plaintiff William M. Lakes ("Plaintiff")[1] was an employee of the City of Brigantine. Plaintiff acknowledged to a supervisor, in response to an inquiry, that he had brought to the attention of the Occupational Safety and Health Administration ("OSHA") the actions of co-employees in shooting BB guns at pigeons in a municipal building, conduct that plaintiff considered to be both illegal and improper under the circumstances. Following this acknowledgement, plaintiff's work assignments were changed and he was subjected to ridicule and

---

[1] Plaintiff Jennifer Lakes brought a *per quod* claim that was dismissed on defendants' motion.

isolation at work by both his co-workers and supervisors. He filed this CEPA complaint seeking damages for what he alleges to be adverse employment actions taken in response to his report to OSHA. He never filed any notice of claim pursuant to TCA.

The applicability of the notice requirements of TCA to causes of action brought pursuant to statutory authorization has been considered in a number of cases. In *Fuchilla v. Layman,* 109 *N.J.* 319, 537 *A.*2d 652, *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988), the Supreme Court decided the issue in the context of the applicability of the notice provisions of TCA to claims brought under the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –49 ("LAD"). In reaching its decision that TCA's notice requirements did not apply to a LAD claim, the court applied an analysis that compared the history and purposes of the two statutory schemes in order to ascertain the legislative intent. The court concluded that the clear public policy of the LAD was to abolish discrimination in the work place, *Id.* at 334, 537 *A.*2d 652, and that the TCA was designed to provide compensation to tort victims without unduly disrupting governmental functions and without imposing excessive financial burden on the taxpaying public. *Id.* at 335, 537 *A.*2d 652. The court went on to discuss the fact that the statutes included distinct—and different—provisions for the procedures to be followed in filing claims under either statutory framework. The court concluded that "our reading of the history, purpose, and provisions of the two acts leads us to conclude that the Legislature did not intend that claims of discrimination be subject to the notice requirements of the [Tort Claims] Act." *Fuchilla, supra,* 109 *N.J.* at 337–8, 537 *A.*2d 652.

*Abbamont v. Piscataway Twp. Bd. of Educ.,* 138 *N.J.* 405, 650 *A.*2d 958 (1994) provided further insight into the Supreme Court's ruling in *Fuchilla.* In *Abbamont,* the plaintiff brought a CEPA claim against his employer, a school board. The issues before the Supreme Court were the vicarious liability of the public employer for the actions of its employees and the entitlement of the plaintiff to claim punitive damages against the public employer.

Again, the Supreme Court undertook an analysis of the different purposes of the two statutory schemes, CEPA and TCA, in considering whether CEPA authorized a claim for punitive damages, notwithstanding the specific provisions of TCA that "no punitive or exemplary damages shall be awarded against a public entity." *N.J.S.A.* 59:5–2c. The Court stated:

In *Fuchilla, supra,* 109 *N.J.* at 330–32, 537 *A.2d* 652, the Court ruled that the notice provisions of TCA do not apply to LAD actions. That reasoning was based, in part, on the different purposes of the two statutes. On the one hand, the purpose of LAD is "to abolish discrimination in the work place." Therefore, awards under LAD are intended to serve not only individual interests but also the public interest. On the other hand, the purpose of TCA is "to provide compensation to tort victims without imposing excessive financial burdens on the taxpaying public." "[A] discrimination claim is dissimilar to those envisioned by the Legislature to be included within the coverage of the Tort Claims Act" because, in part, "[d]iscriminatory conduct actionable under the Law Against Discrimination is more akin to the malicious or willful acts exempted from the Tort Claims Act than the negligently or similarly inflicted injuries covered thereby." Moreover, "[the Tort Claims] Act disavows any remedial purpose to vindicate societal interests or to rectify public or governmental misconduct or to protect any individual constitutional or civil right. It thus expressly prohibits exemplary or punitive damages under the Act ..." Hence, the Court noted that LAD's different purpose "suggests that the Legislature did not intend that the [Tort Claims] Act apply to discrimination claims." [Citations omitted].

The purpose of CEPA, like that of LAD, is different from that of TCA. The whistleblower statute, like LAD, is a civil rights statute. Its purpose is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct. Consistent with that purpose, CEPA must be considered "remedial" legislation and therefore should be construed liberally to effectuate its important social goal. Judiciary, Law and Public Safety Committee, *Statement on Assembly Bills No. 2872, 2118, 2223* (1990) (indicating that "the remedies available under the 'whistle-blower' act are to be liberally construed") ... Like LAD, CEPA promotes a strong public policy of the State: "We view this legislation as a reaffirmation of this State's repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections and a recognition by the Legislature of a preexisting common-law tort cause of action for such retaliatory discharge." *Lepore [LaPore] v. National Tool & Mfg. Co.,* 115 *N.J.* 226, 228, 557 *A.2d* 1371 (1988 [1989]). "In New Jersey, we are deeply committed to the principle that an employer's right to discharge an employee carries a correlative duty to protect his freedom to decline to perform an act that would constitute a violation of a clear mandate of public policy." *D'Agostino v. Johnson & Johnson, Inc.,* 225 *N.J.Super.* 250, 265, 542 *A.2d* 44 (App.Div.1988), *aff'd. o.b.,* 115 *N.J.* 491, 559 *A.2d* 420 (1989) [additional citations omitted.].

[*Abbamont, supra,* 138 *N.J.* at 430–32, 650 *A.2d* 958.]

Thus, the *Fuchilla* and *Abbamont* analyses both stand for the proposition that the procedural and substantive provisions of TCA do not necessarily apply to actions brought pursuant to explicit statutory authority, as opposed to claims brought against an employer under common law theories.

This conclusion was also reached by the Appellate Division when it determined that the notice provisions of TCA did not apply to a claim brought pursuant to the Worker's Compensation Law, *N.J.S.A.* 34:15–1 to –42.

In *Brook v. April,* 294 *N.J.Super.* 90, 682 *A.2d* 744 (App.Div. 1996), a legal malpractice action, the plaintiff claimed that his attorneys had failed to file a TCA notice of claim alleging wrongful termination in retaliation for filing a worker's compensation claim. The *Brook* court was focused on the immunity provisions of TCA, rather than the notice requirements, but in considering the implications of the *Fuchilla* decision, the court observed that "because of the Supreme Court's general approach [in *Fuchilla*], the interplay between the immunity provisions of the Tort Claims Act and other enactments that confer causes of action in seeming conflict is no longer as arcane as it once was." *Brook, supra,* 294 *N.J.Super.* at 95, 682 *A.2d* 744. Noting that the *Fuchilla* court had concluded that "the inquiry [about the interplay between TCA and the statute in question] becomes whether the Legislature intended a discriminatory act allegedly committed by a public entity to be an injury subject to the notice requirements of [TCA]," *id.* at 96, 682 *A.2d* 744, the Appellate Division compared the procedural requirements of the TCA and the Worker's Compensation Law and observed that "the comprehensiveness of the statutory schemes was a significant factor in *Fuchilla* leading the Supreme court to conclude that liability under the LAD was independent of the requirements of the Tort Claims Act." *Id.* at 99, 682 *A.2d* 744. In deciding that the TCA notice requirements did not apply to claims brought under the Worker's Compensation Law, the Appellate Division concluded that TCA "does not trump other statutes that have independent bases in public policy." *Id.* at 100, 682 *A.2d* 744.

Thus, there are several New Jersey cases that, while not directly on point with regard to the issue *sub judice,* offer substantial guidance in determining the proper interplay between TCA and CEPA. Moreover, the precise issue here to be determined was considered by the Third Circuit in *Brennan v. Norton,* 350 *F.*3d 399, 431–433 (3d Cir.2003):

> Although the New Jersey Supreme Court has yet to decide whether the notice of claim requirement of the TCA applies to claims under the CEPA, our examination of relevant precedent convinces us that the TCA's notice of claim requirement does not apply to actions brought under the CEPA.
>
> . . . .
>
> Given the decisions in *Fuchilla, Abbamont,* and *Cavuoti [v. New Jersey Transit Corp.,* 161 *N.J.* 107, 735 *A.*2d 548 (1999)] that the TCA's punitive damage prohibition does not apply to either LAD or CEPA claims against public entities, and that the TCA's notice provisions do not apply to LAD claims against public entities, we believe that the new Jersey Supreme Court would hold that the TCA's notice provisions do not apply to CEPA claims against public entities or their employees, and we so hold.

In light of these holdings, it is appropriate to conclude that the notice of claim provisions of TCA cannot be applied to claims brought pursuant to CEPA. CEPA is remedial legislation that is intended to be applied liberally to effectuate its stated purposes. the generalized approach of TCA to the presentation of claims against public entities was not intended, nor does it operate, to effectuate any substantive or procedural limitations on actions initiated pursuant to specific statutory authorization. There can be no principled basis for declining to apply the rationale and holdings of *Fuchilla* and *Abbamont* to the consideration of the issue here presented. Notwithstanding the fact that some of the comparisons between the provisions of TCA and LAD that influenced the *Fuchilla* Court are not applicable to a comparison of TCA and CEPA, there is no compelling argument for deciding that TCA's notice provisions would apply to bar a CEPA claim when a LAD claim would not be so affected. CEPA is no less a promotion of "strong public policy" than is LAD, and I therefore conclude that the Legislature did not intend that claims under CEPA would be subject to the notice requirements of TCA. An

appropriate order denying the motion by defendants has been entered and will be distributed with this opinion.