**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0753-20

ANTHONY ALLEYNE,
individually and on behalf of
all others similarly situated,

     Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT
CORPORATION,

     Defendant-Respondent.

_____

        Argued March 21, 2022 – Decided August 15, 2022

        Before Judges Messano, Rose and Enright.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0062-18.

        Matthew H. Morgan (Nichols Kaster, PLLP) of the Minnesota bar, admitted pro hac vice, argued the cause for appellant (Schall & Barasch, LLC, Matthew H. Morgan and Robert Schug (Nichols Kaster, PLLP) of the Minnesota bar, admitted pro hac vice, attorneys; Patricia Ann Barasch, Matthew H. Morgan and Robert Schug, on the briefs).

Domenick Carmagnola argued the cause for respondent (Carmagnola & Ritardi, LLC, attorneys; Domenick Carmagnola, of counsel and on the brief; Sean P. Joyce and Jessica A. Merejo, on the brief).

PER CURIAM

Plaintiff Anthony Alleyne, individually, and on behalf of others similarly situated, appeals from an October 8, 2020 Law Division order granting defendant New Jersey Transit Corporation (defendant or NJ Transit) summary judgment and dismissing plaintiff's second amended class action complaint. The two-count complaint alleged NJ Transit's sleep apnea policy was discriminatorily applied to plaintiff and the class members, thereby violating the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50 (count one), and N.J.S.A. 34:11-24.1 of the Workers' Compensation Act (count two).[1] Because we conclude, as did the motion judge, that NJ Transit must prevail as a matter of law, we affirm. But we do so for different reasons than those articulated by the judge in his oral decision. See Brook v. April, 294 N.J. Super. 90, 92 (App. Div. 1996) (affirming the summary judgment orders for reasons other than those expressed by the trial court).

---

[1] The complaint was amended to add count two. Thereafter, the trial court granted plaintiff's motion to certify the class. NJ Transit moved for reconsideration of the August 28, 2020 order granting class certification, but withdrew its motion the day after its summary judgment motion was granted.

A-0753-20

I.

The genesis of NJ Transit's sleep apnea policy was the September 2016 train crash at Hoboken Terminal that left one person dead and more than 100 people injured. The train's engineer fell asleep at the controls as the train neared the station. He suffered from undiagnosed sleep apnea.

The following year, NJ Transit implemented an "Obstructive Sleep Apnea [(OSA)] Policy – Rail Operations" (Policy), effective April 20, 2017. The Policy expresses NJ Transit's "commit[ment] to providing and maintaining a safe environment for all its employees, customers[,] and the general public." To implement that mission, defendant "requires screening for OSA in an effort to identify and diagnose this medical condition that may affect alertness or fatigue in covered and safety sensitive rail operations employees." As a locomotive engineer, plaintiff meets the definition of a safety sensitive employee.

OSA screening occurs during routine physical examinations mandated by defendant and at other times not relevant here. Pursuant to the Policy:

> Covered employees and safety sensitive employees will be paid for any lost wages for time they would have been scheduled to work if they were taken out of service based on their OSA screening criteria if the employee meets all of the following:

A-0753-20

- They were medically not approved[2] based <u>solely</u> on OSA screening criteria;

- They were not paid any wages or wage replacement for the time they were out-of-service;

- After the completion of a clinical sleep study[,] they were deemed to be negative for OSA by a pulmonologist AND by [defendant's m]edical [d]epartment.

Plaintiff was a member of the Brotherhood of Locomotive Engineers and Trainmen (BLET).[3]  Pursuant to Rule 29 of the BLET's collective bargaining agreement (CBA), employees were "required to take and pass examinations connected with their duties."  Those examinations included "physical examinations."  Rule 30 addressed physical examinations and provided, in pertinent part:

> When it is obvious that an [e]ngineer is medically (physically or mentally) impaired in a way that affects his service, [defendant] may hold that [e]ngineer out of service pending the outcome of a medical examination. . . . If it is determined that the [e]ngineer's condition does not warrant being held out of service, such [e]ngineer will be returned to service, and it if is

---

[2]  The Policy provides only NJ Transit's medical department can determine whether the employee is medically not approved, and whether the employee is compliant with OSA treatment.

[3]  When deposed, plaintiff testified he "changed unions after having no representation from the BLET in regard to the entire sleep apnea procedure."

determined that the [e]ngineer was medically fit to perform service at the time he was held out of service, the [e]ngineer will be paid for each day lost at a basic day's pay.

The medical department employs a "Sleep Assessment Monitoring Procedure" during the physical examination of a covered and safety sensitive employee. This procedure includes measurement of the employee's height and weight, body mass index (BMI), and neck circumference, and review of the employee's Epworth Sleepiness Scale questionnaire.[4] Relevant here, a BMI measurement of thirty-five or more is considered a high-risk factor for sleep apnea. At deposition, Dr. Homer L. Nelson, an NJ Transit doctor, testified he also considers an employee's medical history, including diabetes, hypertension, and possibly cardiac arrhythmia as risk factors for sleep apnea. According to Dr. Nelson: "There's no set number of criteria."

NJ Transit considers sleep apnea a medical condition. Accordingly, an employee removed from service for sleep apnea testing is not reimbursed for costs associated with testing or medical consultations. Similar to other medical

---

[4] The Epworth Sleepiness Scale "is a self-administered questionnaire" designed to assess "the person's 'average sleep propensity' . . . across a wide range of activities in their [sic] daily lives." About the ESS, THE EPWORTH SLEEPINESS SCALE, http://epworthsleepinessscale.com/about-the-ess (last visited August 8, 2022).

A-0753-20

conditions, these costs are covered by the employee's medical insurance; co-payments and deductibles are the employee's responsibility. These employees may use available sick time or other accumulated leave time when removed from service. If all the employee's time is exhausted, the employee may apply for sick benefits through the Railroad Retirement Board (RRB). Employees who are removed from service and not diagnosed with sleep apnea are reimbursed for that time, but not for their out-of-pocket expenses.

During plaintiff's October 5, 2016 annual physical examination, NJ Transit's medical department determined his BMI was greater than thirty-five. Plaintiff was removed from service, pending completion of a sleep study. When deposed, plaintiff claimed he was "removed from service based solely on [his BMI]."

Plaintiff's sleep study was performed at a testing center through Trinitas Hospital. Plaintiff testified he "picked Trinitas because [he] was informed that that would be the quickest place to get [him] in for a sleep study." NJ Transit's medical department provided plaintiff a list of medical centers entitled, "Accredited Sleep Center with Expedited Services Available for NJ Transit Employees." The medical department did not give him a "script" for a sleep

study. Instead, plaintiff was instructed to obtain the prescription from his "personal physician."

On October 11, 2016, plaintiff completed an overnight sleep study and shortly thereafter was diagnosed with OSA. Plaintiff complied with the required treatment and was cleared for return to his position on November 9, 2016. The RRB compensated plaintiff for the time during which he was removed from service; he was not reimbursed for the costs associated with testing and treatment.[5]

On appeal, plaintiff raises four challenges to the motion judge's oral decision on summary judgment. In sum, plaintiff argues the judge erroneously: (1) determined sleep apnea is not a disability by incorrectly applying the ADA standard, and further finding NJ Transit did not perceive plaintiff to have a disability; (2) applied the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), and incorrectly concluded

---

[5] In March 2017, plaintiff filed charges with the Equal Employment Opportunity Commission, alleging disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to -12213; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to -796l; and the LAD; and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to -634; and the LAD. N.J.S.A. 10:5-1 to -50. According to his merits brief, plaintiff filed his initial class action complaint in the Law Division in January 2018, "[a]fter receiving a right to sue notice." The notice is not contained in the record on appeal.

plaintiff failed to establish the Policy was discriminatory; (3) found NJ Transit's sleep apnea reimbursement policy is "inextricably intertwined" with the CBA and, as such, preempted by the Labor Management Relations Act, notwithstanding defendant's concession otherwise; and (4) concluded plaintiff was not required to treat with a specific sleep apnea doctor, barring recovery of unreimbursed medical expenses under N.J.S.A. 34:11-24.1.

## II.

We review the trial court's decision on summary judgment de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Employing the same standard the trial court uses, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to the non-moving party nonetheless entitle the movant to judgment as a matter of law. Ibid.; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). We focus only on the motion record before the judge. See Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000). We owe no deference to the trial court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

A-0753-20

Discrimination based on an employee's disability, or perceived disability, is illegal under the LAD.  N.J.S.A. 10:5-4; <u>Victor v. State</u>, 203 N.J. 383, 410 (2010) (the LAD includes one "who is perceived as having a disability" within the class protected under the statute).  "Disability," as defined under the LAD, includes a "physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness." N.J.S.A. 10:5-5(q).  Sleep apnea has been defined as "a disorder characterized by brief interruptions of breathing during sleep[,]" which can cause "job impairment and motor vehicle accidents."  13 <u>Attorneys Textbook of Medicine</u> ¶ 108.50 (2022).

The LAD does not, however, "prohibit the establishment and maintenance of bona fide occupational qualifications" or "prevent the termination or change of the employment of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment."  N.J.S.A. 10:5-2.1; <u>see also</u> <u>Jansen v. Food Circus Supermarkets, Inc.</u>, 110 N.J. 363, 374 (1988) (holding "an employer may consider whether the [disabled] person can do his or her work without posing a serious threat of injury to the health and safety of himself or herself or other employees").  Accordingly, the LAD "must be applied sensibly with due consideration to the interests of the employer,

employee, and the public." Ibid.; see also Muller v. Exxon Rsch. and Eng'g, 345 N.J. Super 595, 602 (App. Div. 2001).

To prove employment discrimination under the LAD, New Jersey courts have adopted the burden-shifting analysis established in McDonnell Douglas, 411 U.S. at 802-03. Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002). Under that analysis, a plaintiff must first establish the elements of a prima facie case of discrimination, which "vary depending upon the particular cause of action." Victor, 203 N.J. at 408.

As the Court recognized in Victor:

> Identifying the elements of the prima facie case that are unique to the particular discrimination claim is critical to its evaluation. Disability discrimination claims are different from other kinds of discrimination claims, for several reasons. That is, for claims of disability discrimination, the first element of the prima facie case, that [the] plaintiff is in a protected class, requires [the] plaintiff to demonstrate that he or she qualifies as an individual with a disability, or who is perceived as having a disability, as that has been defined by statute. The second element requires [the] plaintiff to demonstrate that he or she is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without a reasonable accommodation.
>
> [Id. at 410 (emphasis added) (footnote omitted).]

10

Against those legal principles, we consider plaintiff's contentions. Initially, we agree the motion judge applied the wrong standard when finding plaintiff's sleep apnea condition was not a disability under the ADA. Plaintiff did not assert an ADA claim.[6]

However, the parties have not cited – and our research has not disclosed – any binding authority as to whether sleep apnea is considered a disability under the LAD. But see Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 529 (App. Div. 2019) (concluding the plaintiff, who claimed his obese condition satisfied the definition of disabled under the LAD, failed to demonstrate "his condition was caused by bodily injury, birth defect, or illness"). Nor has plaintiff presented any evidence his sleep apnea was caused by "bodily injury, birth defect, or illness" as required under N.J.S.A. 10:5-5(q). Indeed, plaintiff maintains his BMI measurement was the sole reason NJ Transit removed him from service. More importantly, plaintiff presented no expert evidence on causation. See Dickson, 458 N.J. Super. at 529.

---

[6] Although claims asserted under the LAD and ADA are similarly analyzed under the McDonnell Douglas burden-shifting framework, unlike the ADA, the LAD does not define disability as the inability to perform one or more major life activities. Compare N.J.S.A. 10:5-5(q), with § 42 U.S.C. 12102(1)(A).

Moreover, plaintiff does not claim defendant failed to accommodate his sleep apnea condition. See ibid. The reason for that omission is obvious. An employer is not required to accommodate an employee who cannot perform his or her essential job functions even with an accommodation. See Hennessey v. Winslow Twp., 368 N.J. Super. 443, 452 (App. Div. 2004), aff'd, 183 N.J. 593 (2005). No accommodation would have permitted plaintiff to perform his job safely. Rather, after he successfully completed treatment, plaintiff was returned to service in the same position he held prior to testing for, and diagnosis of, sleep apnea.

Even assuming plaintiff's sleep apnea diagnosis satisfied the definition of disability under the LAD, NJ Transit did not remove plaintiff from service based on his physical impairment or perceived impairment, as plaintiff maintains on appeal. Instead, plaintiff was removed from service for a medical condition that "pos[ed] a serious threat of injury to the health and safety of himself" and others. Jansen, 110 N.J. at 374. That action did not violate the LAD. See N.J.S.A. 10:5-2.1. Notably, plaintiff does not dispute the validity of the Policy, having testified at deposition that NJ Transit had a "valid reason" for attempting to prevent accidents through its screening procedure. Having considered the

undisputed facts in the light most favorable to plaintiff, <u>Brill</u>, N.J. at 540, we are satisfied summary judgment was properly granted to NJ Transit.

Because plaintiff has not established a prima facie case of discrimination, we need not consider his claim under the <u>McDonnell Douglas</u> framework. Simply put, plaintiff has failed to demonstrate he "[wa]s qualified to perform the essential functions of the job," <u>Victor</u>, 203 N.J. at 410, between the date of his physical examination and his return to service following completion of his sleep apnea treatment.

Moreover, although NJ Transit did not raise preemption under the CBA, having concluded NJ Transit's Policy did not violate the LAD, we are satisfied the Policy's reimbursement procedure is consistent with Rules 29 and 30 of the CBA. Plaintiff's "misgivings" concerning the procedures stated in the CBA should be directed toward the parties that negotiated the agreement. <u>See</u> <u>In re Young</u>, 471 N.J. Super. 169, 182 (App. Div. 2022).

Lastly, we are not persuaded by plaintiff's argument that NJ Transit was required to pay for his sleep apnea examination under N.J.S.A. 34:11-24.1. In pertinent part, the statute requires an employer to pay the costs associated with "[m]edical examinations requested by employers," when the "examination is

13

made at the request or direction of the employer, <u>by a physician designated by said employer</u>." <u>Ibid.</u> (Emphasis added).

Plaintiff maintains because NJ Transit gave him a list of sleep centers entitled, "Accredited Sleep Centers with Expedited Services Available for NJ Transit Employees," there exist material issues of fact "as to whether NJ Transit 'designated' certain physicians or sleep centers for purposes of the statute." The motion judge rejected plaintiff's argument, concluding:

> The record is undisputed that New Jersey Transit did not require plaintiff to see a particular doctor. New Jersey Transit gave the plaintiff a list of doctors, but they did not require him to see any specific doctor, and he chose the doctor he wanted to see because he was informed that that would be the quickest place for him to get a sleep study.

The record evidence supports the judge's decision.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0753-20